Kevin T. Snider, State Bar No. 170988
Michael J. Peffer, State Bar. No. 192265
Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Fax (916) 857-6902
Email: ksnider@pji.org
       mpeffer@pji.org
       mmcreynolds@pji.org

*Attorneys for All Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| DONALD WELCH, ANTHONY DUK, AARON BITZER, <br><br>     Plaintiffs, <br><br> v. <br><br> EDMUND G. BROWN, JR., Governor of the State of California, In His Official Capacity, ANNA M. CABALLERO, Secretary of California State and Consumer Services Agency, In Her Official Capacity, DENISE BROWN, Director of Consumer Affairs, In Her Official Capacity, CHRISTINE WIETLISBACH, PATRICIA LOCK-DAWSON, SAMARA ASHLEY, HARRY DOUGLAS, JULIA JOHNSON, SARITA KOHLI, RENEE LONNER, KAREN PINES, CHRISTINA WONG, In Their Official Capacities as Members of the California Board of Behavioral Sciences, SHARON LEVINE, MICHAEL BISHOP, SILVIA DIEGO, DEV GNANADEV, REGINALD LOW, DENISE PINES, JANET SALOMONSON, GERRIE | Case No.: <br><br> **COMPLAINT FOR INJUCTIVE AND DECLARATORY RELIEF** |

SCHIPSKE, DAVID SERRANO SEWELL,    )
BARBARA  YAROSLAYSKY,    )
In Their Official Capacities as Members of the    )
Medical Board of California,    )
    )
        Defendants.    )

**INTRODUCTION**

This is an action challenging the constitutionality of Senate Bill (SB) 1172, which added sections 865, 865.1 and 865.2 to the California Business and Professions Code.  SB 1172 was signed into Law by Gov. Brown on September 30, 2012, and will become effective January 1, 2013, unless enjoined.  Plaintiffs are mental health professionals, a member of the clergy, and an individual seeking to become a mental health professional  whose fundamental First Amendment and other constitutional freedoms will be infringed by this enactment.

Plaintiffs allege against Defendants as follows:

**PARTIES**

**Plaintiffs**

1.    Plaintiff Donald Welch, Ph.D., M.S., LMFT is a licensed marriage and family therapist in the State of California who is subject to the prohibitions of SB 1172.  He holds a doctorate in education and is also an ordained ministerial staff member at Skyline Church in the San Diego area.  He is also the operator of one of the oldest Christian counseling centers in the San Diego area and an adjunct professor at Point Loma Nazarene University and Azusa Pacific University.

2.    Plaintiff Anthony Duk, M.D., is a psychiatrist practicing in the State of California. As such, he is a mental health professional subject to the prohibitions of SB 1172.

3.      Plaintiff Aaron Bitzer is a student pursuing educational opportunities to become a mental health professional.  As a successful former patient who experienced the benefits of sexual orientation change efforts (SOCE), Bitzer seeks to share his personal experiences with future patients as a mental health professional.

**Defendants**

4.      Defendant Edmund G. (Jerry)  Brown, Jr., is the Governor of the State of California.  Governor Jerry Brown resides in, and has his official office in, Sacramento, California.  He is sued in his official capacity.

5.      Defendant Anna M. Caballero is the Secretary of California State and Consumer Services Agency.  Defendant Caballero's official is located in Sacramento, California. She is sued in her official capacity.

6.      Defendant Denise Brown is the Director of Consumer Affairs.  Defendant Brown's official office is in Sacramento, California.  She is sued in her official capacity.

7.      Defendant Christine Wietlisbach is the Chair of the Board of the California Board of Behavioral Sciences.  She is sued in her official capacity.

8.      Defendant Patricia Lock-Dawson is the Vice Chair of the Board of the California Board of Behavioral Sciences.  She is sued in her official capacity.

9.      Defendant Samara Ashley is a Member of the Board of the California Board of Behavioral Sciences.  She is sued in her official capacity.

10.      Defendant, Harry Douglas is a Member of the Board of the California Board of Behavioral Sciences.  He is sued in his official capacity.

11.      Defendant Julia Johnson is a Member of the Board of the California Board of Behavioral Sciences.  She is sued in her official capacity.

12.      Defendant Sarita Kohli is a Member of the Board of the California Board of Behavioral Sciences.  She is sued in her official capacity.

13.      Defendant Renee Lonner is a Member of the Board of the California Board of Behavioral Sciences. She is sued in her official capacity.

14.      Defendant Karen Pines is a Member of the Board of the California Board of Behavioral Sciences.  She is sued in her official capacity.

15.      Defendant Christina Wong is a Member of the Board of the California Board of Behavioral Sciences.  She is sued in her official capacity.

16.      Defendant Sharon Levine is the President of the Board of the California Medical Board. She is sued in her official capacity.

17.      Defendant Michael Bishop is a Member of the California Medical Board.  He is sued in his official capacity.

18.      Defendant Silvia Diego is a Member of the California Medical Board.  He is sued in his official capacity.

19.      Defendant Dev Gnana is a Member of the California Medical Board.  He is sued in his official capacity.

20.      Defendant Reginald Low is a Member of the California Medical Board.  He is sued in his official capacity.

21.      Defendant Denise Pines is a Member of the California Medical Board.  She is sued in her official capacity.

22.      Defendant Janet Salomonson is a Member of the California Medical Board.  She is sued in her official capacity.

23.      Defendant Gerrie Schipske is a Member of the California Medical Board.  She is

sued in her official capacity.

24.     Defendant David Serrano Sewell is a Member of the California Medical Board. He is sued in his official capacity.

25.     Defendant Barbara Yaroslaysky is a Member of the California Medical Board. She is sued in her official capacity.

## JURISDICTION

26.     This Court has federal-question jurisdiction over Plaintiffs' claims arising under the First and Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.  Jurisdiction is therefore proper under 28 U.S.C. § 1331 (general federal question jurisdiction).  This Court has supplemental jurisdiction over Plaintiffs' claims arising under the Constitution of the State of California pursuant to 28 U.S.C. § 1367.

## VENUE

27.     Venue is proper in the Eastern District of California because some of the Defendants reside within the District and a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTS

**Summary of Legislative History:**

28.     Senate Bill 1172 was introduced into the Legislature by Senator Ted Lieu on February 22, 2012.

29.     SB 1172 was subsequently amended on April 9, 16, 25 and 30; May 25; and July 5, 2012.

30.     SB 1172 was heard in the Senate Business & Professions Committee on April 23, 2012, the Senate Judiciary Committee on May 8, 2012, the Assembly Business,

Professions & Consumer Protection Committee on June 26, 2012, and the Assembly Appropriations Committee on August 8, 2012.

31.     At all three policy committee hearings (excluding Appropriations), legislators heard from Californians opposed to the bill, including mental health professionals, persons with personal experiences of positive outcomes from SOCE, and attorneys who questioned the bill's constitutionality.

32.     Members of the legislature also received countless written, electronic, and telephonic communications from their constituents and other Californians, expressing strong opposition to the bill.

33.     The legislative record includes ten separate committee and floor analyses, prepared by legislative staff, that shed light on the legislation's motivations and the overall debate that it generated.  These analyses do not discuss, however, some of the leading constitutional concerns advanced in opposition to the legislation.

**Summary of Bill Provisions:**

34.     The Legislative Counsel's Digest succinctly describes the purpose of SB 1172 as follows:

> This bill would prohibit a mental health provider, as defined, from engaging in sexual orientation change efforts, as defined, with a patient under 18 years of age. *The bill would provide that any sexual orientation change efforts attempted on a patient under 18 years of age by a mental health provider shall be considered unprofessional conduct and shall subject the provider to discipline by the provider's licensing entity.*  The bill would also declare the intent of the Legislature in this regard. (Emphasis in original).

35.     In Section 1, the bill declares, "Being lesbian, gay or bisexual is not a disease, disorder, illness, deficiency or shortcoming…"  The Section then quotes and cites

selected statements from mental health professional organizations and studies in subsections (a) through (m).

36.     In Subsection (n) of Section 1, the Legislature declares that California has a compelling interest in protecting the physical and psychological well-being of minors from the serious harms of sexual orientation change efforts.

37.     Subsection (o) of Section 1 clarifies that the act is not intended to prevent minors from accessing mental health services other than sexual orientation change efforts.

38.     Subsection (a) of Section 2 defines "mental health provider" to include psychiatrists, psychologists, licensed or registered marriage and family therapists, social workers, licensed professional clinical counselors, assistants and trainees in these fields, and anyone else designated as a mental health professional under California law or regulation.

39.     Subsection (b) of Section 2 defines "sexual orientation change efforts" in two parts.

40.     Subsection (b)(1) of Section 2 broadly defines SOCE to include "any practices" that not only seek to change sexual orientation, but also behavior and gender expression.

41.     Subsection (b)(2) of Section 2 clarifies that therapy offering support or affirmation of same-sex attraction and orientation are not prohibited.

**Summary of State Entities**

42.     The Governor is charged with executing the duly enacted laws of California.  He appoints the members of his cabinet, including the Secretary of the Consumer Services Agency.  The Secretary answers to the Governor.  SB 1172 falls under this Secretary's authority for implementation.

43.     The California State and Consumer Services Agency is under the authority of the Governor.  The Secretary of the Agency is appointed by the Governor and holds a cabinet level position.  One of the departments under the Agency is the Department of Consumer Affairs.

44.     The Department of Consumer Affairs website describes the Department's scope as being "responsible for promoting and protecting the interests of millions of California consumers by serving as a guardian and advocate for their health, safety, and economic well-being and by promoting legal and ethical standards of professional conduct."  The Department is comprised of numerous state boards including the California Board of Behavioral Sciences and the California Medical Board.  The members of these two Boards are named as defendants in their official capacities.

45.     The California Board of Behavioral Science (BBS) is the state body tasked with disciplining mental health professionals and is an entity charged with enforcing the statute.   The BBS is responsible for consumer protection through the regulation of Marriage and Family Therapists (MFT); Licensed Clinical Social Workers (LCSW); Licensed Educational Psychologists (LEP); Licensed Professional Clinical Counselors (LPCC); MFT Interns (IMF); Associate Clinical Social Workers (ASW); and Professional Clinical Counselor Interns (PCCI) in the State of California. It is one of the boards within the California Department of Consumer Affairs.

46.     The California Medical Board is a state government agency which licenses and disciplines medical doctors and is an entity charged with enforcing the statute.

///

**Plaintiffs' Beliefs**:

*Mental Health Professionals*

(Donald Welch)

47.    As a licensed marriage and family therapist, Dr. Welch is included in the definition of "mental health provider" subject to the restrictions of SB 1172.

48.    Dr. Welch received his Ph.D. in education from the University of Kansas in Lawrence, Kansas.  Dr. Welch also has a number of other degrees in therapy and religion, including a Master of Divinity from Nazarene Theological Seminary in Kansas City, Missouri; a Master of Science in family therapy from Friends University in Wichita, Kansas; and a Master of Arts in religion from Point Loma Nazarene University in San Diego, California.  Dr. Welch is licensed to practice marital and family therapy in both Kansas and California.

49.    Dr. Welch works at several locations.  One of his employers is a Christian church.

50.    In his professional training and experience, Dr. Welch has studied and encountered adolescent sexual identity confusion.

(Anthony Duk)

51.    Dr. Duk is a licensed psychiatrist who is in private practice.  He provides mental health treatment for patients, a portion of whom are minors.  Said minors have included those struggling with issues relating to sex and sexual orientation.

52.    In the methodology utilized in treating patients, Dr. Duk frequently uses a combination of counseling and prescription medications to assist the patients in achieving their objectives in the therapeutic treatment.

53.    In the event of a patient seeking to gain a stronger level of control over sexual

behaviors, desires, and addictions such as pornography, treatment can include prescription drugs to help control sexual drive, sometimes referred to as libido, in addition to counseling.

54.     If a minor's objectives are to bring his or her sexual conduct and desires into conformity with the religious traditions, cultural norms, and moral standards of the minor, Dr. Duk can provide treatment so long as the minor is heterosexual.  However, under the statute in question, a minor who has unwanted same sex behaviors or attractions cannot be treated with either counseling or prescription medications.

55.     Within that context, if he provides either counseling or medications to assist a minor in achieving their goals regarding bringing same sex behaviors and attractions under control, Dr. Duk is subject to discipline by the Defendant, California Medical Board.  The reason is that such treatment is a "sexual orientation change effort" under the statute.

56.     Dr. Duk is therefore required to discriminate against minor patients for no other reason than their sexual orientation.

57.     Furthermore, as a traditional Roman Catholic Christian, either validating or otherwise enabling sexual desires and behaviors which differ from the tenets of Dr. Duk's faith or that of his minor patients will violate his and their consciences.  It will also interfere with the minor's practice of religion as well as that of the youngster's parents.

          (All Plaintiff Mental Health Professionals)

58.     The statute materially interferes with the plaintiff mental health professionals' exercise of their independent professional judgment in providing treatment to minors who have unwanted same sex behaviors or attractions.  As such, the statute requires the

plaintiff mental health professionals to discriminate against minors who are gay, lesbian, bisexual or questioning youth.  This is in violation of these plaintiff mental health professionals' obligations under the rules of professional ethics to provide treatment to persons regardless of their sexual orientation.

59.     The statute also materially interferes with the private decisions agreed upon between a therapist and client.  Issues touching upon sex involve some of the most personal matters relating to the human experience.  These include: mental and emotional issues, medical matters, religious beliefs, cultural norms, interfamily relationships, and philosophical understandings.  The goals of the client and the approach of the mental health professional in plotting a course for reaching those goals are extremely private matters.  That level of privacy is heightened when it comes to sexuality and the issues relating thereto.   The statute thus involves government intrusion into an intimate zone of privacy.

*Student and Former Client*

60.     Plaintiff Aaron Bitzer experienced same sex attractions throughout his entire adult life.  His views on same sex attraction have evolved over the years. However, he never believed the simplistic message of the Gay Community, which states that "we are born this way and should just live accordingly."  Mr. Bitzer has not and does not believe that this view accurately describes all of the dynamics that he was aware of in his own experience.

61.     Mr. Bitzer has gone through therapy described in the statute as SOCE and reparative therapy and found it quite helpful in achieving his goals.

62.     Currently, he is pursuing a course of academic study so that he can become a

therapist and practice in this area.

63.    Mr. Bitzer intends on accepting clients who are minors struggling with unwanted same sex attractions and behaviors.

64.    The statute prevents him from undertaking this area of practice.

## FIRST CAUSE OF ACTION
### Violation of the Fifth and Fourteenth Amendments – Right to Privacy
(Against All Defendants)

65.    Plaintiffs refer to and incorporate herein by reference the allegations of paragraphs 1-64, inclusive.

66.    The Constitution is recognized to contain a fundamental right to privacy in the Fourth, Fifth, Ninth, Fourteenth and other Amendments.

67.    The right to privacy recognizes that government has limited authority to restrict the ability of citizens to access information and services related to their personal autonomy, identity, and sexuality.

68.    The right to privacy extends to minors as well as adults.

69.    SB 1172 purports to prevent minors, including gay, lesbian, bisexual, and questioning youth, from accessing mental health services and treatment designed to address self-perceived needs to alter sexual desires.

70.    SB 1172 introduces the equivalent of government agents listening in on highly sensitive and private counseling or therapeutic sessions to determine whether the professional's advice and communications are consistent with state orthodoxy.

71.    SB 1172 contains no safeguards to protect such basic concepts of privacy as the psychotherapist-patient privilege or even the clergy-penitent privilege.

72.    The levels of government intrusion and invasion of privacy introduced by SB

1172 are reprehensible and completely incompatible with constitutional privacy rights.

73.     The self-proclaimed compelling interest in the statute is woefully inadequate both on its face and in fact to justify the statute's egregious violation of privacy.

74.     SB 1172 also provides no exception when a mental health provider exercises his or her professional judgment that the prohibited therapy is necessary to protect the life and health of the client or patient.

75.     Plaintiffs have no adequate remedy at law for this continuing violation of their constitutional rights.

76.     The Plaintiffs are entitled to declaratory and injunctive relief, as well as attorney's fees and all other appropriate relief, to remedy the violation of fundamental privacy rights.

**SECOND CAUSE OF ACTION**
**Violation of the First and Fourteenth Amendments to the United States Constitution – Content and Viewpoint Based Discrimination**
(Against All Defendants)

77.     Plaintiffs refer to and incorporate herein by reference the allegations of paragraphs 1-76, inclusive.

78.     The prohibitions of SB 1172 unlawfully create a new category of banned speech, namely "sexual orientation change efforts" directed at minors.  This includes gay, lesbian, bisexual, and questioning youth.

79.     This new category of banned speech bears no relation to the few categories of speech that have been recognized by the courts as unprotected speech.

80.     Moreover, the prohibitions of SB 1172 are invalidly rooted in content and viewpoint distinctions.

81.     As to content, the prohibition is directed at a particular category of speech, namely sexual orientation change efforts.

82.     The prohibition is not primarily concerned with the time, place, or manner of the speech, but with its substance.

83.     Furthermore, the prohibition is viewpoint-based in that it does not purport to ban all professional speech toward minors concerning sexual orientation, same-sex attraction, or gender expression, but only at such speech that is deemed "change efforts" and not affirming or supportive.

84.     Thus, the distinction in the statute rests on the speaker's viewpoints of sexual orientation, same-sex attraction, and gender expression.

85.     SB 1172 subjects professional speakers with disfavored viewpoints to professional discipline by their respective licensing authorities. Said authorities are administered by the named Defendants who are charged with implementing the statute. Further, these Defendants are acting under the auspices of the State of California and are thus state actors.

86.     Thus, the statute intentionally and actually chills speech.

87.     The plaintiff mental health providers espouse and express some of the viewpoints subjected to censure by the statute.

88.     They are therefore in imminent danger of state-sanctioned punishment for his First Amendment expression.

89.     The state does not have any governmental interest sufficient to justify SB 1172's sweeping prohibition of speech.

90.     The self-declared compelling interest in the statute is flimsy, flawed, and a feeble

attempt to nakedly assert a heightened interest that does not exist in fact.

91.     Plaintiffs have no adequate remedy at law for this continuing violation of their

constitutional rights.

92.     Plaintiff is therefore entitled to declaratory and injunctive relief, as well as

attorney's fees, to vindicate the violation of his constitutional rights.

**THIRD CAUSE OF ACTION**
**Violation of the First, Fifth, and Fourteenth Amendments to the United States**
**Constitution – Vagueness**   (Against All Defendants)

93.     Plaintiffs refer to and incorporate herein by reference the allegations of

paragraphs 1-92, inclusive.

94.     SB 1172 threatens to levy significant penalties, including professional discipline,

against Plaintiffs without sufficiently placing them on notice of the specific conduct that

will trigger violation of the statute.  Said penalties are administered by the named

Defendants who are charged with implementing the statute.  Further, these Defendants

are acting under the auspices of the State of California and are thus state actors.

95.     SB 1172 punishes "sexual orientation change efforts" without adequately defining

that phrase.

96.     The legislative history of SB 1172 makes clear that it is targeting so-called

"reparative therapy."

97.     However, while the Plaintiffs generally agree that they practice reparative therapy

in at least some senses of the words, they do not concede that they are "seeking" to

"change" anyone's sexual orientation.

98.     Rather, plaintiffs believe that change must be initiated and sought by the patient,

whether gay, lesbian, bisexual, or questioning, in order to be successful, and they merely

1   assist patients who are already seeking their own change.

2   99.   As a result of these differences in terminology, Plaintiffs cannot be reasonably

3   certain whether their beliefs and practices are forbidden by the statute.

4   100.   SB 1172 is therefore hopelessly vague as to a central provision that imposes

5   penalties.

6   101.   The statutes are so vague that a reasonably intelligent mental health professional

7   would not know what therapy can and cannot be lawfully undertaken for a client who is a

8   "questioning" youth relative to their own sexual orientation.

9   102.   The vagueness in the statute increases to an unconstitutional degree the likelihood

10   that enforcement will be arbitrary, capricious, and discriminatory.

11   103.   Plaintiffs have no adequate remedy at law for this continuing violation of their

12   constitutional rights.

13   104.   Plaintiffs are entitled to declaratory and injunctive relief, as well as attorney's fees

14   and all other appropriate relief, to vindicate the violation of their First and Fourteenth

15   Amendment rights not to be subjected to punishment by a vague statute.

**FOURTH CAUSE OF ACTION**
**Violation of the First, Fifth, and Fourteenth Amendments to the United States**
**Constitution –Substantial Overbreadth** (Against All Defendants)

105.   Plaintiffs refer to and incorporate herein by reference the allegations of

paragraphs 1-104, inclusive.

106.   SB 1172 is substantially overbroad in that it sweeps far more speech than is

necessary under its prohibition.

107.   Rather than focusing on specific therapies or devices that may cause tangible

harm (e.g. pharmaceutical drugs or electroshock therapy), the statute purports to sweep in

a broad range of pure speech that cannot be so proscribed.

108.   The statute reaches beyond even the plaintiffs in this action to include a number of other professions as well.

109.   In that the statute contains no religious exceptions, it would directly curtail the religious expression of members of the clergy who are also mental health professionals.

110.   The statute would also proscribe the religious speech of licensed educational and school psychologists in parochial and other private religious schools.

111.   SB 1172 even casts a pall over parents of children with sexual identity confusion, same-sex attraction, and gender non-conformity by declaring that "family rejection" poses critical health risks to those children, and that the state has a compelling interest in protecting those children from their parents' disapproval.

112.   In sum, SB 1172 reaches to many types of clearly protected religious, familial, and other expressions that are plainly protected.

113.   Plaintiffs have no adequate remedy at law for this continuing violation of their constitutional rights.

114.   Plaintiffs are therefore entitled to declaratory and injunctive relief, as well as attorney's fees and all other appropriate relief, to remedy the statute's First, Fifth, and Fourteenth Amendments to the U.S. Constitution.

**FIFTH CAUSE OF ACTION**
**Violation of the First Amendment – Free Exercise of Religion**
(Against All Defendants)

115.   Plaintiffs refer to and incorporate herein by reference the allegations of paragraphs 1-114, inclusive.

116.   SB 1172 takes the unprecedented and unconstitutional step of prohibiting pure

speech occurring within the four walls of a church or other religious institution.

117.    SB 1172 further prohibits pure speech occurring outside of a religious institution but nevertheless rooted in the speaker's religious convictions.

118.    SB 1172 plainly prohibits the free exercise of religion by the Plaintiffs.

119.    The prohibition of Plaintiffs' religious speech necessarily substantially burdens that same speech.

120.    The legislative history of SB 1172 demonstrates that the Legislature was aware of, and intended, the statute's prohibition on religious and religiously-motivated speech.

121.    The statute is not neutral toward religious beliefs.

122.    The statute is not generally applicable.

123.    The statute's self-declared compelling interest is illusory and woefully inadequate to justify the prohibition on religious speech and practice.

124.    Plaintiffs have no adequate remedy at law for this continuing violation of their constitutional rights.

125.    Plaintiffs are entitled to declaratory and injunctive relief, attorney's fees, and all other appropriate relief to remedy the violation of their free exercise rights under the First and Fourteenth Amendments.

**SIXTH CAUSE OF ACTION**
**Violation of the First and Fourteenth Amendments to the United States Constitution – Establishment Clause** (Against All Defendants)

126.    Plaintiffs refer to and incorporate herein by reference the allegations of paragraphs 1-125, inclusive.

127.    SB 1172 prohibits any individual designated as a "mental health provider" or a

"mental health professional" from offering "sexual orientation change efforts" to minors.

128.     SB 1172 contains no exceptions or limitations for such professionals who are members of the clergy or who operate under the authority of a religious organization.

129.     SB 1172 contains no exceptions or limitations for professionals who approach SOCE in whole or in part from a biblical or religious perspective.

130.     Consequently, SB 1172 directly controls the speech, counseling, and therapeutic practices of religious congregations and ordained ministers, including the Plaintiffs.

131.     SB 1172 is antithetical to settled Establishment Clause values.

132.     At a minimum, SB 1172 creates excessive entanglement by granting state licensing authorities the power to investigate and discipline members of the clergy who also fall within the definitions set forth in the statute.

133.     SB 1172 raises the chilling specter of state agents and agencies censuring the religious beliefs and practices of religious congregations and their ministry staff.

134.     The statute's self-proclaimed compelling interest is woefully inadequate both on its face and in fact to justify this unprecedented intrusion into religious congregations.

135.     Plaintiffs have no adequate remedy at law for this continuing violation of their constitutional rights.

136.     Plaintiffs are entitled to declaratory and injunctive relief, as well as attorney's fees and all other appropriate relief, to remedy this Establishment Clause violation.

**SEVENTH CAUSE OF ACTION**
**Violation of the Fifth and Fourteenth Amendments – Substantive Due Process**
(Against All Defendants)

137.     Plaintiffs refer to and incorporate herein by reference the allegations of paragraphs 1-136, inclusive.

138.    The Fifth and Fourteenth Amendments to the United States Constitution contain recognized protections of substantive due process for fundamental liberty interests.

139.    These fundamental interests include the rights of parents to raise their children according to their values.

140.    SB 1172 infringes parents' fundamental liberty interests in two ways.  First, it deprives parents of the authority to seek reparative therapy, including spiritual counsel from their religious leaders, for their children's sexual confusion.  Second, SB 1172 threatens parents with state intrusion and interference if the parents' child raising practices and inculcation of values are deemed by the state to constitute "family rejection" of a child's sexual orientation.

141.    Parents have fundamental responsibilities as well as rights to seek spiritual and professional counseling for their children.

142.    SB 1172 deprives parents of this right, and hinders them from fulfilling their responsibilities, by prohibiting mental health professionals from offering "sexual orientation change efforts" to minors.

143.    SB 1172 contains no exceptions that would allow either parents or their children to consent to SOCE.

144.    The prohibition of SB 1172 operates regardless of whether the parent is seeking reparative therapy for a child who has experienced sexual abuse.

145.    The prohibition of SB 1172 applies regardless of whether the parent is seeking professional help from a counselor or therapist operating under the authority of the family's religious congregation.

146.    SB 1172 substitutes the state's judgment for the judgment of the parents, the

minor, or the family, in an area of intensely personal, highly sensitive inculcation of parents' beliefs about sexuality to their children.

147.    Moreover, SB 1172 declares that "family rejection" of a minor's sexual orientation, including gender expression, poses a critical health risk.

148.    SB 1172 further declares a compelling state interest in protecting children from such risks.

149.    The statute makes no attempt to define "family rejection."

150.    As a result, the law chills parents' fundamental rights to convey values to their children by claiming unprecedented, unfettered authority to "protect" children from their parents' values.

151.    Plaintiffs have no adequate remedy at law for this continuing violation of their constitutional rights.

152.    Plaintiffs are entitled to declaratory and injunctive relief, as well as attorney's fees and all other appropriate relief, to remedy the violation of parents' fundamental substantive due process rights.

## EIGHTH CAUSE OF ACTION
### Violation of the First and Fourteenth Amendments – Associational Rights
(Against All Defendants)

153.    Plaintiffs refer to and incorporate herein by reference the allegations of paragraphs 1-152, inclusive.

154.    The First Amendment to the Constitution is recognized to include rights of association between and among citizens.

155.    SB 1172 decrees that minors may not associate with mental health professionals for the purpose of seeking to change or alter their own sexual orientation.

156.    SB 1172 decrees that parents may not associate with mental health professionals for the purposes of seeking assistance for their minor children with sexual identity confusion.

157.    SB 1172 decrees that mental health professionals may not associate with minors, regardless of whether the association is desired by or initiated by a minor, for purposes of assisting the minor with "sexual orientation change efforts."

158.    SB 1172 contains no exceptions for minors who are seeking sexual orientation change efforts from a mental health professional who is also the minor's spiritual leader or operates under the authority of the minor's religious congregation.

159.    SB 1172 contains no exceptions for mental health professionals who are members of the clergy or are otherwise interacting with minors as members of their religious congregations.

160.    SB 1172 directly impinges the First Amendment right of association.

161.    The self-proclaimed compelling interest in the statute is woefully inadequate both on its face and in fact to justify the infringement of associational rights.

162.    Plaintiffs have no adequate remedy at law for this continuing violation of their constitutional rights.

163.    Plaintiffs are entitled to declaratory and injunctive relief, as well as attorney's fees and all other appropriate relief, to remedy the violation of their First Amendment rights of association.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request that the Court enter judgment in their favor, and

against all defendants, for full relief, including the following:

1.  Declaratory judgment finding that the California Business and Professions Code §§ 865, 865.1 and 865.2 are unconstitutional;

2.  Preliminary and permanent injunctive relief prohibiting enforcement of California Business and Professions Code §§ 865, 865.1 and 865.2;

3.  Attorney's fees and costs; and

4.  Any and all other appropriate relief to which the Plaintiffs may be entitled including all "appropriate relief" within the scope of F.R.C.P. 54(c).

Dated:  October 1, 2012

s/ Matthew McReynolds
Kevin T. Snider
Michael J. Peffer
Matthew B. McReynolds
Attorneys for Plaintiffs

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF