Kevin T. Snider, State Bar No. 170988
Michael J. Peffer, State Bar. No. 192265
Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Fax (916) 857-6902
Email: ksnider@pji.org
        mpeffer@pji.org
        mmcreynolds@pji.org

*Attorneys for All Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| DONALD WELCH, ET AL, | ) Case No.:   12-cv-02484 |
| | ) |
| Plaintiffs, | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES IN SUPPORT OF** |
| v. | ) **MOTION FOR PRELIMINARY** |
| | ) **INJUNCTION** |
| | ) |
| EDMUND G. BROWN, JR., Governor of the | ) **DATE:   December 3, 2012** |
| State of California, ET AL, | ) **TIME:    2:00 p.m.** |
| | ) **JUDGE:  Hon. William B. Shubb** |
| Defendants. | ) **Ctrm:      5** |

_____

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

  Cases................................................................................................................ iii

  Constitution & Statutes ................................................................................. iv

  Committee Hearings...................................................................................... iv

INTRODUCTION & SUMMARY OF THE ARGUMENT ................................1

FACTS ..............................................................................................................2

LEGAL ARGUMENTS......................................................................................3

  I. Standards for Preliminary Injunctions .........................................................3

II. Plaintiffs Will Suffer Irreparable Harm if a Preliminary Injunction

    A.  Is Not Granted ........................................................................................4

III. Plaintiffs Are Likely to Succeed on the Merits .........................................4

    A. SB 1172 Violates the Federal Constitutional Right to Privacy ...........4

    B. SB 1172 Violates the first Amendment on Multiple Levels...............7

      1. SB 1172 violates the religion clauses ...........................................8

      2. The law flatly bans entire categories of protected speech...........11

        a. The law is blatantly content- and viewpoint-based ...............13

        b. The ban is hopelessly vague .................................................16

        c.  The ban is substantially overbroad .....................................19

    C.  There Is No Compelling State Interest to Justify SB 1172...........21

      1.  The is no compelling state interest to ban SOCE....................21

      2.  Even if there was a compelling state interest, the restriction

_____

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

i

is not narrowly tailored...........................................................................22

IV. The Balance of Equities Tips in Plaintiffs' Favor....................................24

V.  An Injunction Is in the Public Interest....................................................24

CONCLUSION............................................................................................25

### TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002) ....................................................15

*Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009) .........................................13, 19

*Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729 (2011) ......................12, 14, 15, 21, 22

*Caesar v. Mountanos*, 542 F.2d 1064 (9th Cir. 1976) ...............................................5

*Cal. Teachers Ass'n v. Bd. of Educ.*, 271 F.3d 1141

    (9th Cir. 2001) .................................................................17

*Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942) ..............................................11

*Church of Lukumi Babalu Aye, Inc. v. Hialeah*,

    508 U.S. 520 (1993) ...........................................................10, 11, 21

*Coates v. Cincinnati*, 402 U.S. 611 (1971) ....................................................17

*Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002) .......................................14, 15, 17, 23

*Corp. of the Presiding Bishop of the Church of Jesus Christ*

    *of Latter-Day Saints v. Amos*, 483 U.S. 327 (1987) .................................9

*Dausch v. Rykse*, 52 F.3d 1425 (7th Cir. 1994) ..........................................10

*Elrod v. Burns*, 427 U.S. 347 (1976) .........................................................4

*Foti v. City of Menlo Park*, 146 F.3d 629 (9th Cir. 1998) .......................................16, 19

*Gertz v. Welch,* 418 U.S. 323 (1974) ...................................................11

*Hawk v. Hawk*, 855 S.W.2d 573 (1993) .........................................................7

*Hosanna-Tabor Evangelical Lutheran Church v. EEOC*,

    132 S. Ct. 694 (2012) .............................................................8, 9, 20

*In re Marriage Cases*, 43 Cal. 4th 757 (2008) .................................................................22

*Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419 (9th Cir. 2008).....................................14

*Kedroff v. Saint Nicholas Cathedral*, 344 U.S. 94 (1952) .................................................9

*Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) .......................................4

*Lawrence v. Texas*, 539 U.S. 558 (2003) .........................................................................6

*Miller v. California*, 413 U.S. 15 (1973).........................................................................11

*Nally v. Grace Cmty. Church*, 47 Cal. 3d 278 (1988)......................................................10

*Nat'l Ass'n for the Advancement of Psychoanalysis v.*

    *Cal. Bd. of Psychology*, 228 F.3d 1043 (9th Cir. 2000) .............................13, 15, 16

*Nunez v. City of San Diego*, 114 F.3d 935 (9th Cir. 1997) ......................................16, 19

*Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833 (1992) ..................................6, 7

*Roe v. Wade*, 410 U.S. 113 (1973) .................................................................................4, 5

*Rosenberger v. Rector of the Univ. of Va.*, 515 U.S. 819 (1995)..................................14

*Sammartano v. First Judicial Dist. Court*, 303 F.3d 959

    (9th Cir. 2002) ...........................................................................................4, 24

*Virginia v. Hicks*, 539 U.S. 113 (2003) .........................................................................19

## CONSTITUTION & STATUTES

  1. U.S. Const. amend. I .........................................................................*Passim*

## COMMITTEE HEARINGS

  *1. Bill Analysis, Hearing on SB 1172 Before the Senate Rules Committee,*

    2011-12 regular session (Ca. 2012).................................................10, 11

---

## INTRODUCTION & SUMMARY OF THE ARGUMENT

Plaintiffs and moving parties include a psychiatrist; a mental health professional who provides counseling under the auspices of a religious institution, and who is also an ordained member of the clergy; and an aspiring mental health professional who positively benefited from "sexual orientation change efforts" (SOCE) and plans to become an SOCE practitioner to minors.  The plaintiffs are challenging California Business & Professions Code §§ 865, 865.1 and 865.2, known in the legislative process as Senate Bill (SB) 1172.[1]  This legislation imposes sweeping new restrictions on communication between mental health professionals and their patients.  It also invades family privacy, freedom of religion, and speech.  Because this first-of-its-kind law will upset the constitutional status quo when it becomes effective on January 1, 2013, and because central provisions of the law stand little chance of ultimately surviving constitutional scrutiny, it should be preliminarily enjoined during the course of this litigation.

Plaintiffs will suffer irreparable harm if a preliminary injunction is not granted because SB 1172 chills First Amendment activities to a manner and degree that cannot later be redressed with damages.  Plaintiffs are likely to succeed on the merits because:

- SB 1172 violates the federal constitutional right to privacy in that it intrudes upon the psychotherapist-patient relationship and ignores psychotherapist-patient privilege; deprives patients of the right to determine their own personal beliefs; and infringes on parents' right to make child-rearing decisions.

- SB 1172 violates the religion clauses of the First Amendment since it does not include an exception for religious-based counseling or counseling done by those employed by a

---

[1] All sections referred to herein are to the Business & Professions Code.

_____

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

1

church and therefore governed by church doctrine.

- SB 1172 chills First Amendment rights because it arbitrarily bans an entirely new

  category of protected speech.

  o The new ban is impermissibly content- and viewpoint-based because it targets the

    category of speech called SOCE and only regulates conversations in regards to that

    category, rather than regulating *all* conversations regarding sexual orientation.

  o The new ban is vague in that the phrase "sexual orientation change effort" is not

    clearly defined and leaves a reasonable mental health professional unable to

    determine exactly what conduct is prohibited when dealing with minors who have

    questions about their sexuality.

  o The ban is overbroad because it encompasses all mental health professionals and

    makes no exceptions for those practicing under the auspices of religious institutions

    with doctrinal beliefs against same-sex attraction.  It also reaches into the family and

    parental rights, providing no exception for consent of the minor and parents.

- There is no compelling state interest to justify SB 1172, as the state merely declares their

  interest—the health and safety of minors—is compelling without supporting that claim.

  Even if there was a compelling interest, SB 1172 is not narrowly tailored because it does

  not clearly articulate the behavior it bans; moreover, it makes no exceptions for consent

  or the health and safety of the minor patient and proscribes more religious conduct than

  necessary.

## FACTS

SB 1172 states, in pertinent part, as follows:  "Under no circumstances shall a mental

_____

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

2

health provider engage in sexual orientation change efforts with a patient under 18 years of age." Exhibit 1, pg. 3, Request for Judicial Notice (filed concurrently herewith).  Under SB 1172, engaging in SOCE with a minor patient "shall be considered unprofessional conduct and shall subject a mental health provider to discipline by the licensing entity for that mental health provider."  *Id.*  A "mental health professional" is defined by the bill to include psychiatrists, psychologists, licensed or registered marriage and family therapists, social workers, licensed professional clinical counselors, assistants and trainees in these fields, and anyone else designated as a mental health professional under California law or regulation.  *Id.*

"SOCE" is defined by the bill to mean "any practices by mental health providers that seek to change an individual's sexual orientation. This includes efforts to change behaviors or gender expressions, or to eliminate or reduce sexual or romantic attractions or feelings toward individuals of the same sex."  *Id.*  On the other hand, therapy offering support or affirmation of same-sex attraction and orientation is not prohibited by SB 1172.  *Id.*  The bill declares that California has a compelling interest in protecting the physical and psychological well-being of minors from the serious harms of SOCE.  *Id.*

SB 1172 makes no exceptions for any form of therapy based on religious principles or mental health professionals employed by a church.  Neither does it make any exceptions to protect the life and health of a minor patient.

## **LEGAL ARGUMENT**

### I. **Standard for Preliminary Injunctions.**

The Ninth Circuit has held that preliminary injunctive relief will be available when a plaintiff can show that (1) he is likely to succeed on the merits, (2) he is likely to suffer

_____

irreparable harm if a preliminary injunction is not granted, (3) the balance of equities tips in the

plaintiffs' favor, and (4) that an injunction "is in the public interest." *Klein v. City of San

Clemente*, 584 F.3d 1196, 1200 (9th Cir. 2009).  Where a motion for a preliminary injunction is

based on allegations of First Amendment infringements, the government must justify the

infringement.  *Id.* at 1201.

In addition, "the fact that a case raises serious First Amendment questions compels a

finding that there exists the potential for irreparable injury, or that at the very least the balance

of hardships tips sharply in [favor of the party alleging First Amendment injury]." *Sammartano

v. First Judicial Dist. Court,* 303 F.3d 959, 973 (9th Cir. 2002)).

## II. Plaintiffs Will Suffer Irreparable Harm if a Preliminary Injunction Is Not Granted.

"The loss of First Amendment freedoms, for even minimal periods of time,

unquestionably constitutes irreparable injury." *Klein*, 584 F.3d at 1208 (quoting *Elrod v. Burns*,

427 U.S. 347 (1976)).  The impending enforcement of SB 1172 in California will chill First

Amendment activities in a manner and to a degree that cannot be redressed later through

assessment of damages.  It is therefore essential that the Court preliminarily enjoin enforcement

of the statute to prevent irreparable injury to the plaintiffs.

## III. Plaintiffs Are Likely to Succeed on the Merits.

### A. SB 1172 Violates the Federal Constitutional Right to Privacy.

The United States Constitution is recognized to contain a fundamental right to privacy

that has been extended by the Supreme Court to include personal, marital, familial, and sexual

privacy, as protected by the Bill of Rights and its penumbras.  The right to privacy in a doctor-

patient relationship was also recognized by the Court.  *See generally Roe v. Wade*, 410 U.S. 113

_____

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

4

(1973).  This right to privacy in doctor-patient relationships has been extended by the Ninth

Circuit to include a right to privacy in psychotherapist-patient relationships.  *See generally*

*Caesar v. Mountanos*, 542 F.2d 1064 (9th Cir. 1976).  "The Supreme Court has severely

restricted state intrusion into zones of privacy that have one or more of these elements that

inhere in the treatment relationship between the patient and his psychotherapist." *Id.* at 1072

(Hufstedler, J., concurring and dissenting).

      The reason for the protection of privacy as a fundamental constitutional right in

psychotherapist-patient relationships is simple: the communications between a patient and a

psychotherapist are often intimate in nature, as they frequently involve discussions of the moral,

religious, and philosophical views of the patient, in addition to "medical problems of family,

marriage, motherhood and fatherhood, human sexuality, and almost always...[the] strong

emotional needs of the patient." *Id.* at 1072 (Hufstedler, J., concurring and dissenting).  *See*

*also*, Declarations of Plaintiffs Donald Welch at ¶ 12 and Anthony Duk at ¶ 14.  It is therefore

one of the most highly sensitive and intimate zones of privacy.  Although this fundamental right

to privacy is not absolute, it "enters the combat zone heavily armed"; it will only yield to a

compelling state interest, and only to the extent necessary to protect that interest.  *Caesar*, 542

F.2d at 1072 (Hufstedler, J., concurring and dissenting).

      The level of government intrusion and invasion of privacy introduced by SB 1172 is

completely incompatible with constitutional privacy rights.  Because of the fundamental right to

privacy, the government has very limited authority to restrict citizens' ability to access

information and services related to their personal autonomy, identity, and sexuality.  "At the

heart of liberty is the right to define one's own concept of existence, of meaning, of the

_____

universe, and of the mystery of human life.  Beliefs about these matters could not define the

attributes of personhood were they formed under compulsion of the State." *Lawrence v. Texas*,

539 U.S. 558, 574 (2003) (quoting *Planned Parenthood of Se. Pa.* v. *Casey,* 505 U. S. 833

(1992)).

SB 1172 directly violates the fundamental constitutional right to privacy in that it

prohibits minors from defining their own existence.  See the declaration of Plaintiff, Aaron

Bitzer at ¶¶ 23, 25 and Welch Decl. ¶¶ 8-9.  SB 1172 prevents minors from accessing mental

health services and treatment that would assist them in diminishing same-sex attraction in

accordance with self-defined religious, moral, cultural, and philosophical beliefs.  Duk Decl. ¶¶

16-17; Welch Decl. ¶ 8-9.  SB 1172 instead requires minors to accept as fact the state's

definition of their sexuality, regardless of the religious, moral, cultural, and philosophical beliefs

of the minor.  Duk Decl. ¶ 19.  *See also* Welch Decl. ¶ 13.

Additionally, SB 1172 violates the fundamental right to privacy in psychotherapist-

patient relationships.  The bill creates the equivalent of government bureaucrats eavesdropping

on highly sensitive and private counseling or therapeutic sessions to determine whether the

professional's advice and communications are consistent with state orthodoxy.  SB 1172 ignores

psychotherapist-patient privilege.  It also provides no exception allowing a mental health

provider to exercise his or her professional judgment that the prohibited therapy is necessary to

protect the life and health of the client or patient, such as when a minor is seeking to escape

unwanted same-sex attraction sparked by sexual abuse.  Welch Decl. ¶ 15.  Bitzer Decl. ¶ 24.

Finally, the Supreme Court has consistently held that the fundamental constitutional

right to privacy functions to protect citizens from government intrusion into intimate family

_____

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

matters such as marriage, procreation, contraception, and child-rearing.  *Planned Parenthood*, 505 U.S. at 926-27 (Blackmun, J., concurring and dissenting).  The right to rear children is so "firmly rooted in our culture" that the Supreme Court has "held it to be a fundamental liberty interest protected by the Fourteenth Amendment to the United States Constitution." *Hawk v. Hawk*, 855 S.W.2d 573, 578 (Tenn. 1993).

SB 1172 infringes parents' fundamental right to privacy in two ways: 1) it deprives parents of the ability to seek reparative therapy, including spiritual counsel from their licensed religious leaders, or mental health professionals who share their faith (Duk Decl. ¶ 12),  for their children's sexual confusion; and 2) it substitutes the state's judgment for the judgment of a child's parents in an area that is intensely personal and highly sensitive—the inculcation of parents' beliefs about sexuality to their children—and threatens state interference if the parents' child-raising practices are deemed to constitute "family rejection" of a child's sexual orientation.  Welch Decl. ¶¶ 7-8.  This intrusion into the parent-child relationship flies in the face of the constitutionally protected right to privacy in matters concerning child-rearing.

The self-proclaimed compelling interest in the statute is woefully inadequate both on its face and in fact, as explained in Section III.C., to justify the statute's egregious violation of privacy.  For these reasons, it is highly likely that plaintiffs will prevail in getting SB 1172 declared unconstitutional for violation of the fundamental constitutional right to privacy. Therefore, the statute should be enjoined.

**B.  SB 1172 Violates the First Amendment on Multiple Levels.**

It is difficult to imagine a statute that trespasses on more First Amendment principles than does this legislation.  SB 1172 attempts to create an entirely new category of banned

speech, wholly distinct from the few spheres previously identified by the Supreme Court as unworthy of protection.  In so doing, it not only clamps an iron hand over the mouths of physicians and other highly educated professionals, but it also jams its fingers in the ears of minor patients seeking to exercise their right to hear and obtain counsel.  The legislation offers no refuge to therapists and counselors who practice under the auspices of religious institutions and base their therapy in whole or in part on religious doctrine.  It is substantially overbroad, targeting far more speech than is necessary to achieve state objectives.  It is vague, leaving practitioners to hazard guesses as to which speech might incur the wrath of the state.  It is unabashedly content- and viewpoint-based.  Each implicated aspect of the First Amendment will be taken in turn.

### 1.  SB 1172 violates the religion clauses.

SB 1172 carries unwarranted, impermissible implications for the faith community.  The legislation contains no exceptions for interdisciplinary mental health professionals whose practices include, or are even primarily focused, on religious ministry.

Earlier this year, in *Hosanna-Tabor Evangelical Lutheran Church v. EEOC*, the Supreme Court reiterated that church employment of ministers lies at the heart of protections advanced by the Free Exercise Clause, Establishment Clause, and Free Speech that render this employment largely immune from statutory regulation.  *Hosanna-Tabor Evangelical Lutheran Church v. EEOC*, 132 S. Ct. 694 (2012).  Under *Hosanna-Tabor* and its predecessors, there is a "spirit of freedom for religious organizations, an independence from secular control or manipulation—in short, power to decide for themselves, free from state interference, matters of church government as well as those of  faith and doctrine."  *Id.* at 704.  For this reason, the

_____

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

Court held that there is strong First Amendment support, especially under the Free Exercise and Establishment Clauses, for a ministerial exception to employment discrimination laws. *Id.* Additionally, because the matter at issue was an internal church matter, the Court did not even consider whether there was a compelling state interest when making its decision.

In the same way the hiring and firing of church ministers is excepted from adherence to employment discrimination laws, an exception for therapy based on religious principles, or for mental health professionals employed by a church, is indispensable to this type of regulation. *See generally Kedroff v. Saint Nicholas Cathedral*, 344 U.S. 94 (1952); *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327 (1987) (recognizing that entanglement problems arise when employment-related statutes do not contain religious exceptions). Indeed, in the present case, one of the plaintiffs is employed by a church as a licensed counselor. He must hold to the theological views of the church as a precondition and continual condition for employment. Further, he is prohibited from "encouraging, enabling or validating beliefs or behaviors in others…contrary to the teachings of the Church…,including human sexuality." Welch Decl. ¶ 5.

A religious minister has the right to care for the congregation. This includes counseling congregants, or hiring a counselor to do so, as needed. Welch Decl. ¶ 5. For example, Plaintiff Welch is employed as the counseling Pastor of a church. SOCE counseling may be performed as part of the church's religious beliefs and practices and therefore may be subject to the clergy-penitent privilege. In any case, dictating whether and how a church carries out therapy or counseling for congregants who are struggling with an issue determined to be religiously immoral or sinful is the equivalent of deciding *for* that church how to carry out the tenets of its

_____

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

faith.  Welch Decl. ¶ 17.  This is the very thing the Free Exercise and Establishment Clauses were created to prevent.

In *Dausch v. Rykse*, the court rejected a negligence claim against a church where there was a close nexus between pastoral counseling and church doctrine.  *Dausch v. Rykse*, 52 F.3d 1425 (7th Cir. 1994).  Other than limited exceptions for the sexual abuse of children, courts have been very reluctant to impose legal duties on church counseling that would intrude on doctrine.  *Nally v. Grace Cmty. Church*, 47 Cal. 3d 278 (1988).

The entanglement created by SB 1172 places it outside the normal rubric for Free Exercise cases.  Thus the courts' traditional approach of assessing whether a law is neutral and generally applicable is obviated in regards to SB 1172.  And even if this statute is considered subject to the traditional approach, the law is not neutral or generally applicable, and therefore does not survive strict scrutiny.

While SB 1172 may appear neutral on its face, its adoption was accompanied by direct, negative references to religious beliefs.  "Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with the requirement of facial neutrality." *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 534 (1993).  Inherent in the debates and discussions regarding the adoption of this legislation was an understanding and intent that SB 1172 will restrict religious speech.

For instance, during the state Senate committee's analysis of the bill on August 28, 2012, in the course of a discussion regarding the background of homosexuality and SOCE, the committee drew support from the World Health Organization's statement that "sexual orientation...is not to be regarded as a disorder...it is often a result of unfavorable and intolerant

_____

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

1   attitudes of the society or a conflict between sexual urges and religious belief systems." *Bill*

2   *Analysis, Hearing on SB 1172 Before the Senate Rules Committee*, 2011-12 regular session (Ca.

3   2012) (Exhibit 10).[2]  This paints religious therapies and doctrines regarding homosexuality in a

4   negative light.

5       In later discussion, the Senate committee pointed an accusing finger at religious groups

6   offering SOCE, stating "[o]thers, particularly conservative Christian transformational ministries,

7   use the term conversion therapy to refer to the utilization of prayer, religious conversion,

8   individual and group counseling to change a person's sexual orientation." *Id.*  The Legislature

9

10  thus demonstrated its belief that limiting SOCE was synonymous with limiting religious speech.

11      In *Lukumi Babalu*, the Court found a statute unconstitutional for having similar anti-

12  religious motivations even though it was neutral on its face.  *Church of Lukumi Babalu Aye, Inc.*

13  *v. Hialeah*, 508 U.S. 520, 534 (1993).  The present case is comparable and SB 1172 is therefore

14  unconstitutional under the Free Exercise and Establishment Clauses and should be enjoined.

15

16          **2.   The law flatly bans an entire category of protected speech.**

17      In the First Amendment hierarchy, perhaps no governmental action is more sharply

18  circumscribed than flat prohibitions on speech.  Classic examples of permissible prohibitions

19  include obscenity, *Miller v. California*, 413 U.S. 15 (1973); defamation, *Gertz v. Welch,* 418

20  U.S. 323 (1974); and fighting words, *Chaplinsky v. New Hampshire*, 315 U.S. 568 (1942).  Into

21  this arena, SB 1172 drops a flat prohibition on speech that is at once both straightforward and

22  sweeping:  "Under no circumstances shall a mental health provider engage in sexual orientation

23  change efforts with a patient under 18 years of age."  Exhibit 1, pg. 3.  The language is both

24

25  _____

26  [2] For all of the legislative analyses, see Exhibits 2-10.

27  _____

28

striking and stunning.  What the courts have long recognized cannot be done in most contexts, SB 1172 will do unless enjoined.

This latest encroachment on speech is, of course, far from the Legislature's first attempt to push the bounds of government control on First Amendment expression.  Perhaps most memorably in the past five years, the Supreme Court slapped down the state's attempt to add violent video games to the short list of banned speech.  In *Brown v. Entertainment Merchants Association*, California enacted Assembly Bill (AB) 1179, which prohibited the sale or rental of "violent video games" to minors and required the packaging on such games to be labeled "18." *Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729 (2011).  The Court held that AB 1179 was unconstitutional in that it was overbroad and imposed an unconstitutional restriction on protected speech.  *Id.* at 2771.

There is little reason to believe SB 1172 will fare any better, and much to indicate that it is even more pernicious.  Whereas violent video games are almost entirely entertainment-oriented, SOCE necessarily implicates core issues of human identity and sexuality.  *See* Duk Decl. ¶ 15, Welch Decl. ¶ 12 (discussing the broad range of intimate personal beliefs that sexuality touches on).  While the legislature may not agree with the choices being made by those who seek out and offer SOCE, the importance of the underlying issues sought to be addressed by patients and therapists is undeniable.  *See generally* Bitzer Decl. ¶¶ 23-24.

For these reasons, it is highly likely that plaintiffs will prevail in ultimately getting the prohibited speech aspects of SB 1172 declared unconstitutional.  In the absence of an injunction, plaintiffs will experience imminent loss of their First Amendment freedoms on January 1, and no subsequent judicial remedy will be able to restore that loss.  The government's largely

_____

anecdotal evidence offered to support passage of the bill—countered by anecdotal evidence in opposition to the bill—falls far short of demonstrating that the public interest will be meaningfully affected by, much less harmed by, an injunction to protect the plaintiffs' constitutional liberties.  A preliminary injunction should be granted.

### a)   <u>The ban is blatantly content- and viewpoint-based.</u>

Not only is the ban on SOCE for minors an impermissible attempt to expand the categories of banned speech, but the ban is unabashedly content- and viewpoint-based, without sufficient justification.

The hallmark of a content-based speech restriction is that it requires examination of the subject matter in order to determine whether the restriction applies.  *See Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043 (9th Cir. 2000).  *See also Berger v. City of Seattle*, 569 F.3d 1029, 1045 (9th cir. 2009).  Here, there should be little dispute that the legislation is targeted at a particular category of speech called SOCE.

The legislation is also viewpoint-based.  It does not purport to regulate all discussions between psychotherapists and their patients about sexual orientation or changes in the patient's sexuality.  Rather, the legislation introduces the specter of the state appearing in the counseling room, in the doctor's office, and next to the therapist's couch whenever the subject of sexuality arises.  If either the patient or psychotherapist speaks of sexual orientation in a manner consistent with government orthodoxy, no state action is implicated.  If, however, the conversation focuses on changing the patient's sexual orientation from homosexual to heterosexual, SB 1172's prohibitions, and the liability it imposes, are then triggered.

Content- and viewpoint-based discrimination have been prohibited time and again.  The

_____

Supreme Court called viewpoint-based discrimination an "egregious form of content discrimination," and held that the "government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector of the Univ. of Va.*, 515 U.S. 819, 829 (1995). And the Ninth Circuit has held that "Viewpoint-based and content-based restrictions on speech are, for the most part, equally pernicious and, thus, restrictions of either variety must ordinarily be subjected to the same degree of scrutiny." *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 431 n.26 (9th Cir. 2008).

The Ninth Circuit has also noted that viewpoint discrimination is especially troubling in the First Amendment context, stating that "[w]hen the government targets not subject matter but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Conant v. Walters*, 309 F.3d 629, 637 (9th Cir. 2002). The First Amendment requires that regulating speech "be a last—not first—resort." *Id.* at 637.

In *Brown v. Entertainment Merchants Association*, California tried to create an entirely new category of content-based regulation aimed solely at restricting speech directed at children. The Court concluded there was no history in the United States allowing for the restriction of children's access to depictions of violence, and that the state's claim that video games are a special problem, because minor players participate in the violence within a video game and determine the ultimate outcome of the game, is unpersuasive. *Brown*, 131 S. Ct. at 2731. The Court held that "[s]peech that is neither obscene as to youths nor subject to some other legitimate proscription cannot be suppressed solely to protect the young from ideas or images that a legislative body thinks unsuitable for them," adding that there was insufficient evidence to

_____

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

support  claims that the games were harmful.  *Id.* at 2736.

Just as the state in *Brown* designed a new category of banned speech, SB 1172 seeks to create an entirely new category as well: SOCE.  Just as there is no history in this country allowing for the ban of violent video games, there is no history allowing for the ban of therapy that might be determined to be SOCE either.  Moreover, just as there was no legitimate basis for the legislators in *Brown* to determine what was or was not suitable for children playing video games, there is no legitimate basis for the legislators to determine now what is or is not suitable in a therapy or counseling session.  The determination of suitable counseling is best left to a licensed mental health professional, on an individual, case-by-case basis.  Furthermore, there is insufficient evidence to show that the banned therapy is harmful; the evidence offered was largely anecdotal rather than scientific in nature, and was countered by evidence in support of SOCE.  *See also Conant,* 309 F.3d at 643; *Ashcroft v. Free Speech Coal.,* 535 U.S. 234 (2002) (holding that without a stronger, more direct connection between the statute and the harm prevented by it, the state may not prohibit speech on the ground that it may encourage illegal conduct).

In the *National Association for the Advancement of Psychoanalysis* (*NAAP*) case, the Ninth Circuit held that California's mental health licensing laws, which regulated the practice of psychology and other professions, did not restrict First Amendment rights.  *See generally Nat'l Ass'n for the Advancement of Psychoanalysis*, 228 F.3d 1043.  The court determined that because the laws did *not* "dictate what can be said between psychologists and patients during treatment" and because "[n]othing in the statutes prevent[ed] licensed therapists from utilizing psychoanalytical methods," the laws were content neutral and therefore constitutional.  *Id.* at

_____

1055.  California was not "dictat[ing] the content of what is said in therapy; the state merely

determine[d] who is qualified as a mental health professional."  *Id.* at 1056.  By contrast, in the

present case, the very *purpose* of SB 1172 is to both dictate what is said between mental health

professionals and their patients during treatment, and to prevent licensed therapists from

utilizing certain counseling methods.  Therefore, while regulation of professions may be within

the police power of the state, it is unconstitutional to restrict the mental health profession to this

degree under the *NAAP* decision.

SB 1172 is a stunning content- and viewpoint-based restriction on speech.  As such, the

statute must be enjoined.

### b)  <u>The ban is hopelessly vague.</u>

To avoid being found unconstitutional under the void-for-vagueness doctrine, an

ordinance must (1) define an offense with sufficient detail that an ordinary person can

understand what conduct is and is not prohibited; and (2) establish standards to permit the

enforcement of the law by police in a non-arbitrary, non-discriminatory manner.  *Nunez v. City

of San Diego*, 114 F.3d 935, 940 (9th Cir. 1997).  In challenging an ordinance based on facial

vagueness, it does not need to "be vague in all applications if it reaches a substantial amount of

constitutionally protected conduct."  *Id.*  at 940.

Where the ordinance implicates constitutionally protected rights, the need for

definiteness is greater.  *Id.* at 940.  This is especially true when First Amendment freedoms are

at stake, as the vagueness analysis is then applied more strictly, requiring that statutes provide a

greater degree of specificity and clarity than would be necessary otherwise.  *Foti v. City of

Menlo Park*, 146 F.3d 629, 638-39 (9th Cir. 1998).  To trigger this heightened vagueness

_____

scrutiny, "it is sufficient that the challenged statute regulates and potentially chills speech

which, in the absence of any regulation, receives some First Amendment protection." *Cal.*

*Teachers Ass'n v. Bd. of Educ.*, 271 F.3d 1141, 1150 (9th Cir. 2001).

The heightened vagueness scrutiny is triggered in regards to SB 1172, as the statute

chills speech a great deal.  Even without that heightened scrutiny, however, SB 1172 is

undoubtedly and hopelessly vague on its face because it punishes "sexual orientation change

efforts" without adequately defining that phrase.  *See* Duk Decl. ¶ 19, Welch Decl. ¶ 13.

Whether a patient-psychotherapist discussion constitutes SOCE depends on the meaning

attributed to that phrase by the patient, the doctor, or by some unknown government agent.  This

is comparable to *Conant*, a case in which the Court found a law banning doctors from

recommending marijuana to patients to be invalid because the definition of "recommendation"

was vague and therefore not narrowly tailored.  *Conant*, 309 F.3d at 639.  *See also Coates v.*

*Cincinnati*, 402 U.S. 611, 613-14 (1971) (holding that an ordinance prohibiting "annoying"

conduct was void for vagueness because "annoying" was not clearly defined).

Under SB 1172, if a minor wants a mental health professional to help him "embrace his

masculinity," it is unclear whether this constitutes an effort to change "gender expression" and

thereby subjects the professional to discipline. Duk Decl. ¶ 7.  Similarly, a mental health

professional is unable to determine whether aiding a heterosexual patient in "embracing his

masculinity" is a punishable offense, because the definition of SOCE makes it possible that this

could be encompassed by the statute as a change in gender expression.  *See generally* Welch

Decl. ¶¶ 13-14, Duk Decl. ¶¶ 6-7.

Under SB 1172, situations in which a minor who is bisexual or homosexual and addicted

_____

to pornography, also present a problem. A mental health professional cannot determine whether providing therapy or, in the case of psychiatrists, a prescription to dampen sexual libido for the purpose of fighting the pornography addiction would qualify as SOCE under the vague definition given in the statute. *Id.* ¶ 13; Duk Decl. ¶¶ 19-21. Moreover, if a counselor suggests an internet filter to block sexually explicit content, has the counselor violated SB 1172 if the filter blocks straight *and* gay pornography? Welch Decl. ¶ 13. Under the plain language of section 865(b), SOCE includes any "efforts to change behaviors or…to eliminate or reduce sexual…attractions…toward individuals of the same sex." Both a prescription or filter would apparently run afoul of this section.

Furthermore, while the Plaintiffs agree that they practice reparative therapy in some sense, they do not believe that they are "seeking" to "change" anyone's sexual orientation. Welch Decl. ¶ 10. They believe that change must be sought by the patient in order to be successful, and they merely assist patients who are already seeking this change. Welch Decl. ¶ 10. *See also* Bitzer Decl. ¶ 22. From this viewpoint, it is the patients, not the mental health professional, who is engaging in SOCE. As a result of these differences in terminology, plaintiffs cannot be reasonably certain whether their beliefs and practices are forbidden by the statute.

The statute is so vague that a reasonably intelligent mental health professional would not know what therapy can and cannot be lawfully undertaken for a patient who is bisexual or a "questioning" youth. Welch Decl. ¶ 16; Duk Decl. ¶ 20. Under SB 1172, a mental health provider does not know whether he is allowed to help a minor seeking clarity on the intertwined issues of heterosexual and homosexual desires. *See* Welch Decl. ¶ 16; Duk Decl. ¶¶ 6, 20.

_____

SB 1172 paralyzes the mental health professional by putting him so in fear of violating the statute that, when the subject of homosexuality versus heterosexuality comes up with any minor patient, the professional is so uncertain about what is allowed that he would choose to do nothing at all rather than risk discipline.  *See* Duk Decl. ¶ 7.  *See also* Welch Decl. ¶¶ 14, 16. The vagueness of the statute also increases to an unconstitutional degree the likelihood that enforcement will be arbitrary, capricious, and discriminatory.  *See Berger*, 569 F.3d at 1047-48; *Foti*, 146 F.3d at 639.  Because the statute is hopelessly vague, SB 1172 should be enjoined.

### c)  __The ban is substantially overbroad.__

Under the First Amendment's overbreadth doctrine, "showing that a law punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep," is enough to invalidate all enforcement of that law, until it is narrowed so as to remove the threat to constitutionally protected speech. *Virginia v. Hicks*, 539 U.S. 113, 123 (2003).  A plaintiff is not required to have standing himself to bring an overbreadth challenge so long as the very existence of the challenged statute may cause others to "refrain from constitutionally protected speech."  *Nunez*, 114 F.3d at 949.

While the parties before the Court illustrate the chilling effects of SB 1172, its stranglehold reaches far beyond these parties to untold individuals not before the Court.  At a glance, the ban falls on all California psychiatrists, psychologists, licensed professional counselors, licensed marriage and family therapists, registered marriage and family therapists, licensed clinical social workers, school psychologists, interns, and trainees.  *Cf. Berger*, 569 F.3d at 1046 (holding that an ordinance banning street performers in a public park was overbroad because the sweep of those encompassed by the ordinance's definition of "street

_____

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

performer" was "extraordinary").

Most disturbingly, the statute offers no exceptions to the targeted professionals, even for those practicing under the auspices of religious institutions with strong doctrinal beliefs against same-sex attraction, such as Plaintiff Welch.  Welch Decl. ¶¶ 1-2, 5, 17.  Thus, the law would sweep into a church where a staff or volunteer LMFT is counseling a member of the church youth group; it would enforce a new orthodoxy in the offices of school psychologists employed by parochial schools; and it would haunt social workers serving youth at a religious camp or in a religious hospital.  For that matter, SB 1172 would dictate the counsel offered by an ordained minister who holds interdisciplinary licensures in one of the targeted fields.  Welch Decl. ¶¶ 1, 5, 15-17.  Application of this law to ministers is plainly impermissible.  *Hosanna-Tabor*, 132 S. Ct. 694.  Nor is the state qualified to dissect religious doctrine from non-spiritual therapy in other religious institutional settings.

The overbreadth in this statute also extends to family.  SB 1172 extends a flat ban on parents' ability to parent their children in a manner of their choosing, particularly in regards to the sharing of sensitive and personal beliefs regarding sexuality and religious beliefs, a clear violation of the First Amendment right to privacy and the Free Exercise Clause.  Welch Decl. ¶¶ 7-8; Duk Decl. ¶ 12.  The statute contains no exceptions that would allow either parents or their children to consent to SOCE.  As a result, the law chills parents' fundamental rights to convey values to their children by claiming unprecedented, unfettered authority to "protect" children from their parents' values.  Welch Decl. ¶ 7; Duk Decl. ¶¶ 17-18.

These predicaments faced by those not presently before the Court leave little doubt that SB 1172's ill-conceived prohibitions are substantially overbroad and must be enjoined.

_____

### C.  There Is No Compelling State Interest to Justify SB 1172.

An act that imposes a restriction on the content of protected speech is invalid unless the state can demonstrate that it passes strict scrutiny, i.e., that the act is justified by a compelling government interest and that it is narrowly tailored to serve that interest.  *Brown*, 131 S. Ct. at 2738.  Additionally, a law that fails to meet the neutrality and general applicability requirements of the Free Exercise Clause must also pass strict scrutiny.  *Church of Lukumi Babalu*, 508 U.S. at 531.

In the present case, there is no compelling state interest for the ban on SOCE.  To the extent that the state has heightened interest in protecting children, SB 1172 is not narrowly tailored to achieve those interests.

### 1.  There is no compelling state interest to ban SOCE.

In *Brown v. Entertainment Merchants Association*, California's efforts to ban violent video games for children was shot down because the Supreme Court determined two things: 1) the ban created a new category of restricted speech unsupported by precedent, and 2) the compelling interest offered by the government in support of the restriction—the health and safety of the minors playing violent games—was supported by insufficient evidence to show that there was a threat to the health and safety of the minors in question.  *Brown*, 131 S. Ct. at 2738-41.

Likewise, in seeking to justify its breathtaking restrictions on speech, the Legislature failed to identify an interest widely recognized as "compelling."  Instead, in a manner comparable to *Brown*, the Legislature created an entirely new category of banned speech supported by the health and safety of minors as its compelling interest: "California has a

_____

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

compelling interest in protecting the physical and psychological well-being of minors...and in protecting its minors against exposure to serious harms caused by sexual orientation change efforts." Exhibit 1, pg. 3.  However, just as in *Brown*, no compelling scientific evidence has been offered that the prohibited speech has the effect the Legislature claims it does.  The statute relies on claims that SOCE "*can* pose critical health risks" such as depression, guilt, social withdrawal, stress, decreased self-esteem and authenticity to others, loss of friends and potential romantic partners, problems in sexual and emotional intimacy, blame towards parents, and a loss of faith.  *Id.*, at pg. 1 (emphasis added).  While the state certainly has an interest in protecting children—even compelling interest in some areas—it does not follow that such generic harms as guilt, relationship problems, and even loss of faith provide the state with virtually unfettered authority to ban speech and activities claimed to produce these harms.  *See Brown*, 131 S. Ct. at 2738-39 (under strict scrutiny, ambiguous proof is not sufficient).

The state's asserted compelling interest is also premised on the hotly disputed notion of sexual orientation immutability.  The scientific validity of the state's premise is so controversial that the California Supreme Court delicately avoided addressing the issue even while embracing same-sex marriage in its 2008 *In re Marriage Cases*.  *In re Marriage Cases*, 43 Cal. 4th 757, 841-43 (2008).  What the Court could not justify doing, the Legislature cannot credibly accomplish simply by declaring it to be so.

To date, a true compelling interest has yet to be put forward that would justify the unprecedented restrictions on speech and exercise of religion created in SB 1172.

## 2. Even if there was a compelling state interest, the restriction is not narrowly tailored.

SB 1172 is anything but narrowly tailored.  The statute is overinclusive, affecting more

_____

speech and the ability to exercise religion than is necessary to accomplish its goal.

Remarkably, the ban on SOCE created in SB 1172 does not actually articulate what speech is proscribed. As detailed in the vagueness discussion in Section III.B.2.b above, a reasonable person would have difficulty determining what qualifies as SOCE. Thus, whether or not a particular therapeutic or counseling method qualifies as SOCE depends largely on the meaning attributed to it by currently unknown state agents, who may have differing ideas as to the definition. Similarly, in *Conant*, the Supreme Court struck down a law banning doctors from recommending marijuana to patients in part because it failed to clearly define "recommendation," forcing doctors to suppress speech the government may not constitutionally prohibit. The Court held that this failure meant that the law was not narrowly tailored. *Conant*, 309 F.3d at 639.

In addition, SB 1172's total ban on SOCE is not an effective way of accomplishing its goal. The statute makes no exception for patients who wish to consent, or for the health and safety of the minor. Welch Decl. ¶ 15. Furthermore, patients who truly want to experience SOCE—patients who are confused, upset, and desperate for help with what they perceive to be a serious moral or religious issue—will not be prevented from making sexual orientation change efforts on their own via the internet, self-help books, or unlicensed counselors. Duk Decl. ¶¶ 8-9. "Word-of-mouth and the Internet are poor substitutes for a medical doctor; information obtained from chat rooms...cannot make up for the loss of individualized advice from a [professional] with many years of training and experience." *Conant* 309 F.3d at 644. A minor seeking SOCE therapy can also simply leave the state in order to find SOCE therapy elsewhere. Duk Decl. ¶¶ 8-9. It is therefore clear that the ban on SOCE, as defined by SB 1172, is

_____

overinclusive and ineffective.

The entanglement created by SB 1172 places it outside the normal rubric for Free Exercise cases. Thus the courts' traditional approach of assessing whether a law is neutral and generally applicable is obviated in regards to SB 1172. And even if this statute is considered subject to the traditional approach, the law is not neutral or generally applicable, and therefore does not survive strict scrutiny.

There is no compelling interest to justify banning SOCE, but even if there was, it is not sufficiently narrow to justify the violation to freedom of speech and freedom to exercise religion. SB 1172 should therefore be enjoined.

**IV. <u>The Balance of Equities Tips in Plaintiffs' Favor.</u>**

The plaintiffs have catalogued above the imminent constitutional threats to patients, families, and professionals. The irreparable harm in related equitable considerations, ranging from restrictions on speech to religious exercise to privacy, create a heavy imbalance in favor of an injunction. On the other side of the scale, plaintiffs are unaware of any significant equities that weigh in favor of the state or would militate against maintaining the constitutional status quo. It therefore appears that the balance of equities tips sharply in favor of the plaintiffs.

**V. <u>An Injunction Is in the Public Interest.</u>**

When considering whether to grant a preliminary injunction, courts have "consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano*, 303 F.3d 959, 974 (9th Cir. 2002). Californians espouse a wide diversity of political, religious, and philosophical views, but they share a strong consensus that First Amendment values must remain atop the pinnacle of public policy. When this constitutional

_____

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PRELIMINARY INJUNCTION

hierarchy is threatened, as is argued in the foregoing pages, and the Legislature has demonstrated no urgency for the particular enactment occasioning that threat, it is in the public interest to ensure the measure's constitutionality before its restrictions take effect.  In the present case, prudence urges a preliminary injunction until the serious shortcomings of SB 1172 can be fully adjudicated.

## CONCLUSION

The state's interests in protecting children are commendable, and at times even compelling.  Those interests do not, however, justify every encroachment, intrusion, or infringement upon constitutional freedoms.  Where, as here, a statute seeks to go where no statute has gone before—pushing past sacrosanct boundaries of privacy, professional judgment, familial integrity and religious autonomy in the process—a searching judicial inquiry is appropriate.  Little can be gained, and much lost, by implementing the statute before these momentous questions are answered.  A preliminary injunction should therefore be granted so that the stroke of midnight on December 31 does not transform mental health professionals into mere mouthpieces of the state.

Dated:  October 26, 2012

s/ Matthew B. McReynolds_____
Kevin T. Snider
Michael J. Peffer
Matthew B. McReynolds
Attorneys for Plaintiffs

_____