Kevin T. Snider, State Bar No. 170988
Michael J. Peffer, State Bar. No. 192265
Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Fax (916) 857-6902
Email: ksnider@pji.org
       mpeffer@pji.org
       mmcreynolds@pji.org

*Attorneys for All Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| DONALD WELCH, ANTHONY DUK, AARON BITZER, <br><br> Plaintiffs, <br><br> v. <br><br> EDMUND G. BROWN, JR., Governor of the State of California, In His Official Capacity, ANNA M. CABALLERO, Secretary of California State and Consumer Services Agency, In Her Official Capacity, DENISE BROWN, Director of Consumer Affairs, In Her Official Capacity, CHRISTINE WIETLISBACH, PATRICIA LOCK-DAWSON, SAMARA ASHLEY, HARRY DOUGLAS, JULIA | Case No.:   2:12-02484 <br><br> **DECLARATION OF DONALD WELCH, PH.D., M.S., LMFT, IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |

_____

DECLARATION OF DONALD WELCH

1

| | |
|---|---|
| 1 | JOHNSON, SARITA KOHLI, RENEE ) |
| 2 | LONNER, KAREN PINES, ) |
|  | CHRISTINA WONG, In Their Official ) |
| 3 | Capacities as Members of the California ) |
|  | Board of Behavioral Sciences, ) |
| 4 | SHARON LEVINE, MICHAEL ) |
| 5 | BISHOP, SILVIA DIEGO, DEV ) |
|  | GNANADEV, REGINALD LOW, ) |
| 6 | DENISE PINES, JANET ) |
| 7 | SALOMONSON, GERRIE SCHIPSKE, ) |
|  | DAVID SERRANO SEWELL, ) |
| 8 | BARBARA YAROSLAYSKY, ) |
| 9 | In Their Official Capacities as Members ) |
|  | of the Medical Board of California, ) |
| 10 | ) |
| 11 | Defendants. ) |

I, Donald W. Welch, hereby declare, that I am a named plaintiff in the above-encaptioned action, that I am over the age of eighteen, and that if called upon, I could, and would, truthfully testify of my own personal knowledge as follows:

1.   I am a licensed marriage and family therapist in the state of California (#MFC 50129) and a licensed clinical marriage and family therapist (#090) in the state of Kansas. In addition, I am an ordained minister.  Moreover, I am an AAMFT Approved Supervisor.

2.   My education is as follows: Ph.D. in education from the University of Kansas in Lawrence, Kansas (1994); M.Div. from Nazarene

---
DECLARATION OF DONALD WELCH

2

Theological Seminary in Kansas City, Missouri (1986); M.A. in religion from Point Loma Nazarene University in San Diego, California (1980); M.S. in family therapy from Friends University in Wichita, Kansas (1998).

3. Prior to relocating to southern California, I served as a member of the faculty as a full-time Professor of Christian Education and Family Studies at MidAmerica Nazarene University in Olathe, Kansas.

4. Currently, I am the president of Center for Enriching Relationships, Inc. which is a nonprofit professional counseling center. Further, I am the owner and director of a for-profit professional counseling center called Family Consultation Services, Inc.  I have not left the academy but also serve as an adjunct professor at Point Loma Nazarene University and Azusa Pacific University.

5. In addition, I am also employed part time as the Counseling Pastor for Skyline Wesleyan Church (herein "Skyline" or "Church").  A precondition, and continual condition, for my employment at Skyline is that I hold to the theological and doctrinal views of the Church, by both confession and conduct.  This applies to both my personal and professional life.  As such, as an employee, I am prohibited from encouraging, enabling or validating beliefs or behaviors in others which is contrary to the teachings

of the Church. Attached as Exhibit 13 is a true and correct copy of relevant excerpts from *The Discipline Of The Wesleyan Church 2008* (Offenses, 1. Individual, Nos. 5004 and 5006 at pp. 6-7; Offenses, 2. Local Church, Official of District Body, 5120 at pp. 8-9). This encompasses matters involving human sexuality, including sexual behavior. See, Exhibit 13 (Marriage And The Family, No. 222, at pg. 3 Covenant Membership Commitments, No. 265, at pp.4-5) and *Position Statements of The Wesleyan Church: Homosexuality* (a true and correct copy of which accompanies this declaration and is marked as Exhibit 14.)

6.   I have counseled numerous cases of same sex attraction.

7.   Since children under the age of eighteen developmentally have many questions about their sexuality, I have professionally worked with many adolescents, young adults and mature adults confused about their sexual orientation. It is important that parents -- who potentially continue to have the greatest positive influence on their child -- be given the opportunity to teach their children the religious, moral and ethical beliefs of their choice. For the state to decide what religious, moral or ethical beliefs the child will possess goes against what is considered healthy family functioning.

8. SB 1172's prohibition on sexual orientation change efforts for minors will disallow my clients from choosing to execute biblical truths as a foundation for their beliefs about their sexual orientation. In addition, the law's prohibition will disallow my support of a parent who embraces an orthodox biblical view of homosexuality and as such believes that a gay lifestyle would not be in the best interest of his or her child.

9. The law will further interfere with my assisting a minor client who has expressed the stated goal of wanting to reduce same sex attractions. I will be forced to turn away such a young person merely because he or she is gay, lesbian, bisexual or a questioning youth.

10. Additionally, I do not attempt to "change a minor's sexual orientation" against their will. If the client is unwilling, attempts at changing a belief or behavior -- of any kind -- is folly. This is particularly true of a teenager. Therapists don't coerce patients into our belief system but respect their goals, feelings, and wishes through acts of assessment and unconditional positive regard to help them discover who they are.

11. SB 1172s materially interferes with the exercise of my independent professional judgment in providing treatment to minors who have unwanted same sex behaviors or attractions.

12. Counseling necessarily requires a significant level of trust between the therapist and the client. The reason is that highly personal matters are revealed to the therapist. This is a heightened concern when matters of sex are at issue. Sexuality touches on religious tenets, philosophical understandings, morality, emotional and mental issues, medical matters, relationships with family, and cultural norms. SB 1172 will interfere with honest communications between me and minor clients when the young person wants to share concerns about their sexual orientation.

13. Attempts at compliance with SB 1172 are for me problematic. First the law is unclear as to how it must be applied within the dynamic setting of counseling. For example, if a teenager who is a Christian wants help with controlling emotions, fantasies and behaviors relative to opposite sex attractions, there is no prohibition under the law. But, if the same young person reveals both opposite and same sex attractions, then under the law I could only allow him or her to discuss matters related to heterosexual temptations. When the subject is turned to homosexual attractions, am I to tell him or her that I'd rather not hear this? Or if a young person struggles with pornography, both straight and gay, can I suggest an internet filter

which blocks all sexually explicit sites?  Does that break the law?  Instead, should I tell the minor to adjust the settings to block only heterosexual sites but leave the homosexual sites in place?  Is that even possible?

14.   There are scores of such similar situations as those described above.  Trying to stay within the law would be unduly burdensome.

15.   Additionally, some young people dealing with sexual orientation issues are depressed and are in danger of hurting themselves or even taking their own lives.  Although I am a mandatory reporter in the event of someone posing a danger to themselves or others, that requirement merely directs me to bring in law enforcement.  The law censors my speech by requiring me to withhold what can be lifesaving information. Contacting law enforcement authorities is important, but it is fundamentally different than counseling which has a redemptive purpose.  It is regrettable that the Legislature did not provide an emergency exception to SB 1172 so that mental health providers can use their professional judgment to protect the health or even save the life of a minor through the practice of their craft.  Instead, there is an absolute prohibition from providing anything but the state's message on sexual orientation, regardless of the consequences.

---

16. Further, attempts at staying within this law would be fraught with landmines as I try to avoid being brought up on charges before the Board of Behavioral Sciences. This is particularly problematic with the rather common issue of bisexual and questioning youth. The reason, as explained by the example above, is that both same sex and opposite sex attractions are intertwined within the same individual. Attempting to discuss one while ignoring the other is unworkable.

17. Finally, my compliance with SB 1172 will jeopardize my employment at the Church. Skyline is bound by the tenets of faith of its denomination, The Wesleyan Church. As employees, Church counselors do not have the option of enabling or otherwise encouraging beliefs or conduct that are contrary to the teachings of the Church. That is a position that cannot even be entertained as a subject for negotiation.

I declare, under penalty of perjury under the laws of the State of California and of the United States, that the foregoing is true and correct to the best of my own personal knowledge. Executed this 22nd day of October, 2012, in the City of Coronado, County of San Diego, State of California.

/s/ Donald Welch_____
Donald W. Welch, Ph.D., M.S., LMFT Declarant