1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kevin T. Snider, State Bar No. 170988
Michael J. Peffer, State Bar. No. 192265
Matthew B. McReynolds, State Bar No. 234797
PACIFIC JUSTICE INSTITUTE
P.O. Box 276600
Sacramento, CA 95827
Tel. (916) 857-6900
Fax (916) 857-6902
Email: ksnider@pji.org
         mpeffer@pji.org
         mmcreynolds@pji.org

*Attorneys for All Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION**

DONALD WELCH, ANTHONY DUK, ) Case No.:   2:12-02484
AARON BITZER,                )
                             ) **DECLARATION OF ANTHONY**
          Plaintiffs,        ) **DUK, M.D., IN SUPPORT OF**
                             ) **MOTION FOR PRELIMINARY**
                             ) **INJUNCTION**
v.                           )
                             )
EDMUND G. BROWN, JR., Governor )
of the State of California, In His Official )
Capacity, ANNA M. CABALLERO, )
Secretary of California State and )
Consumer Services Agency, In Her )
Official Capacity, DENISE BROWN, )
Director of Consumer Affairs, In Her )
Official Capacity, CHRISTINE )
WIETLISBACH, PATRICIA LOCK- )
DAWSON, SAMARA ASHLEY, )
HARRY DOUGLAS, JULIA )

_____

DECLARATION OF ANTHONY DUK

1

JOHNSON, SARITA KOHLI, RENEE )
LONNER, KAREN PINES, )
CHRISTINA WONG, In Their Official )
Capacities as Members of the California )
Board of Behavioral Sciences, )
SHARON LEVINE, MICHAEL )
BISHOP, SILVIA DIEGO, DEV )
GNANADEV, REGINALD LOW, )
DENISE PINES, JANET )
SALOMONSON, GERRIE SCHIPSKE, )
DAVID SERRANO SEWELL, )
BARBARA  YAROSLAYSKY, )
In Their Official Capacities as Members )
of the Medical Board of California, )
)
        Defendants. )

I, Anthony D. Duk, hereby declare, that I am a named plaintiff in the

above-encaptioned action, that I am over the age of eighteen, and that if

called upon, I could, and would, truthfully testify of my own personal

knowledge as follows:

    1.     I am a medical doctor and a board certified adult and general

psychiatrist in full time private practice.

    2.     In addition to working with adults of all ages, I work with

teenagers over sixteen.

    3.     I use various approaches with my patients including

philosophical and Christian counseling and cognitive behavioral techniques.

DECLARATION OF ANTHONY DUK

2

1   As a psychiatrist I frequently use a combination of counseling and

2   prescription medications to assist the patients in achieving their objectives in

3
4   the therapeutic treatment.

5          4.      A small portion of my practice focuses on counseling minors.

6          5.      In this regard, I can and have been asked to assist in dealing

7
8   with unwanted sexual desires and behaviors.  These unwanted sexual desires

9   or behaviors encompass persons struggling with heterosexual, homosexual,

10  bisexual, and gender identity issues.

11
12         6.      My current clientele includes minors who are struggling with

13  homosexuality and bisexuality.  If SB 1172 remains in effect, then I will not

14  be able to provide these minors with help, for no other reason than that they

15
16  are gay. Within that context, if I try to help the teenager by providing either

17  counseling or medications to assist in achieving their goals regarding

18  bringing same sex behaviors and attractions under control, I am subject to

19
20  discipline by the California Medical Board.  The reason is that such

21  treatment is a "sexual orientation change effort" under the statute.

22         7.      I recently had a minor with gender confusion and some

23
24  thoughts that he was homosexual. Because of SB 1172 likely passing, I felt I

25

26

27
_____
                        DECLARATION OF ANTHONY DUK
28
                                    3

could not start any discussion about manhood, addressing his sexual abuse, or how to overcome the abuse and embrace his masculinity.

8.     If I change my counseling practices to accommodate the new law, it will not meet the goals of these clients and their parents.  They will either have to seek help from mental health professionals outside of California or will not be able, as a practical matter, to receive the mental health services that they desire.  Because of this, they will be forced into counseling with persons who lack the professional experience and educational requisites of a mental health professional.  These minors will be in immediate danger of not having reasonable access to mental health services.

9.     Referring teenagers and their parents who want therapy for unwanted same-sex attractions to licensed professionals across state lines would pose a substantial time and financial burden on these families. Indeed, such an undertaking is not possible for many homes.  These families may well turn to seeking generalized help on the internet or through persons not licensed in the area of mental health.

10.     I am a Christian.  The expression of my faith is through the Roman Catholic Church. As a practicing Catholic, I am personally familiar

with the teachings of the Church relative to human sexuality.    The Church teaches that "sexuality is ordered to the conjugal love of man and woman. In marriage the physical intimacy of the spouses becomes a sign and pledge of spiritual communion." *Catechism of the Catholic Church* ("CCC"), 2360. Further, the Church teaches that the "spouses' union achieves the twofold end of marriage:  the good of the spouses themselves and the transmission of life.  These two meanings or values or marriage cannot be separated without altering the couple's spiritual life and compromise the goods of marriage and the future of the family.  The conjugal love of man and woman thus stands under the twofold obligations of fidelity and fecundity."  CCC, 2363.

11.    As a traditional Roman Catholic Christian and a medically trained psychiatrist, I hold the Church's position and the position of medical science, sociology, anthropology and research, that homosexuality is not a natural variant of human sexuality (Harvey, Society of Catholic Social Scientists, Sorokin, Wilson), it is changeable (Ward, Maxmen, Kilgus Essentials of Psychopathology (2009), 1 Corinthians 6:9-11) and it is not predominantly determined by genetics (CCC 2358, Collins, director of National Institutes of Health, NE Whitehead).

12.     Moreover, the Church teaches that being a homosexual is not, in and of itself sinful (CCC 2357).  Rather, it is acting out on the sexual conduct.  My Church and sociological data teaches that sexual activity is only to be engaged in between a man and woman within the confines of marriage (CCC 2362, Girgis/George/Anderson).  If I validate that theological position, though do not assert that being a homosexual is in and of itself a sin, I cannot tell whether I am in violation of the law.  This is true even if the young person and his or her parents are also Roman Catholic and have specifically sought help from me because I am a psychiatrist who shares their faith.

13.     Providing counseling which either validates or enables sexual desires and behaviors which are contrary to the tenants of the Catholic Church will serve to violate my conscience and interfere with the practice of my religion.  Indeed, doing so will also violate the conscience of Christian patients who are minors and their parents as well as interfere with the practice of their religion.

14.     It could be psychologically and spiritually devastating for minors to be placed in a position where they are informed that their religious beliefs are wrong or misguided and that there is government, and, by

_____

DECLARATION OF ANTHONY DUK

6

extension, societal disapproval of their sincerely held religious beliefs and practices.

15.     The law further inserts the government into the doctor/patient relationship on the intensely personal issue of sexual orientation.  This matter touches on the most personal issues in the human condition, including sex, family relationships, religion, culture, and medical issues. The goals of the client and the approach of the mental health professional in plotting a course for reaching those goals are extremely private matters.  The level of privacy required is heightened when it comes to sexuality.   SB 1172 is particularly troubling for me as a mental health professional because the law involves government intrusion into an intimate zone of privacy.

16.     Another alternative is for me to refer all minors with unwanted same sex attraction or confusion to other therapists whom, I believe, will unethically encourage those minors to pursue a gay lifestyle. That, in and of itself, is a religious dilemma for me.

17.     My patients include people from a variety of races, nationalities, cultures and religions.   If a minor's objectives are to bring his or her sexual conduct and desires into conformity with the religious traditions, cultural norms, and moral standards of the minor, I can provide

treatment so long as the minor is heterosexual.  However, under SB 1172, a minor who has unwanted same sex behaviors or attractions cannot be treated with either counseling or prescription medications.

18.     In addition, SB 1172 would force me to tell a teenager raised in a traditional home, who wants help with unwanted same-sex attractions, that he or she must not resist but rather embrace these feelings.  In other words, I would have to ignore their background.  Instead, I would be essentially required to communicate: "Your culture is inferior.  Your faith is false. Your parents' morals are wrong."  It would be psychologically devastating to a teenager to have a medical doctor state that the minor has been deceived by every source of authority and stability in their life.  The distress and upheaval such messaging could cause in the home would be traumatic.

19.     The law also places me in a difficult position because it is unclear as to what aspects of my practice are now prohibited.  It is not uncommon to have a patient who seeks counseling because he or she is addicted to pornography, both heterosexual and homosexual.  The law is so vague that I do not know whether assisting the teenage patient with extinguishing the addiction as to both heterosexual and homosexual

1  pornography is allowed or am I only allowed to help the young person with

2  the issue of heterosexual pornography addictions.

3

4      20.    To practice psychiatry within the requisites of SB 1172 when

5  dealing with the complex issues of teenage sexual orientation is impossible

6  if the goals of the teenager are to bring sexual addictions under control.

7  Apparently I'm to look the young person in the eye and say that his or her

8

9  goals are not lawful in the state of California.  In other words, "the

10  government does not hold your views, and neither can you."

11

12      21.    In the event a teenage patient seeks to gain a stronger level of

13  control over sexual behaviors, desires, and addictions, treatment can include,

14  in addition to counseling, prescription drugs to help control sexual drive,

15  sometimes referred to as *libido*.  If a minor patient is bisexual or a

16

17  questioning youth, charting a course of treatment is problematic.  For

18  example, there is no medication which works to exclusively control straight

19  libido, but leave gay and lesbian urges undisturbed.  In view of that, to state

20  that SB 1172 is, for psychiatrists, unworkable and thus irrational would be

21

22  charitable.  The law is absurd.

23

24      I declare, under penalty of perjury under the laws of the State of

25  California and of the United States, that the foregoing is true and correct to

26

27

DECLARATION OF ANTHONY DUK

9

28

the best of my own personal knowledge.  Executed this 19th day of October,

2012, in the County of San Bernardino, State of California.


/s/ Anthony Duk_____
Anthony Duk, M.D.
Declarant