UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| DONALD WELCH, ANTHONY DUK, AARON BITZER,<br><br>                 Plaintiffs,<br><br>    v.<br><br>EDMUND G. BROWN, JR., Governor of the State of California, In His Official Capacity, ANNA M. CABALLERO, Secretary of California State and Consumer Services Agency, In Her Official Capacity, DENISE BROWN, Director of Consumer Affairs, In Her Official Capacity, CHRISTINE WIETLISBACH, PATRICIA LOCK-DAWSON, SAMARA ASHLEY, HARRY DOUGLAS, JULIA JOHNSON, SARITA KOHLI, RENEE LONNER, KAREN PINES, CHRISTINA WONG, In Their Official Capacities as Members of the California Board of Behavioral Sciences, SHARON LEVINE, MICHAEL BISHOP, SILVIA DIEGO, DEV GNANADEV, REGINALD LOW, DENISE PINES, JANET SALOMONSON, GERRIE SCHIPSKE, DAVID SERRANO SEWELL, BARBARA YAROSLAYSKY, In Their Official Capacities as | CIV. NO. 2:12-2484 WBS KJN<br><br>MEMORANDUM AND ORDER RE: MOTION FOR PRELIMINARY INJUNCTION |

1

1  Members of the  Medical Board
   of California,
2
                Defendants.
3

4                      ----oo0oo----

5          Plaintiffs Donald Welch, Anthony Duk, and Aaron Bitzer

6  seek to enjoin enforcement of Senate Bill 1172 ("SB 1172"), which

7  prohibits mental health providers in California from engaging in

8  sexual orientation change efforts ("SOCE") with minors.  The

9  court previously granted plaintiffs' motion for a preliminary

10 injunction after finding they could likely show that SB 1172

11 violated their rights to free speech under the First Amendment.

12 Characterizing SB 1172 as a regulation of therapeutic treatment,

13 not expressive speech, the Ninth Circuit held that SB 1172 did

14 not violate free speech rights and thus reversed the court's

15 order granting plaintiffs' motion for a preliminary injunction.

16 See Pickup v. Brown, 740 F.3d 1208, 1229-32, 1236 (9th Cir.

17 2014).  The Ninth Circuit also held that SB 1172 is not

18 unconstitutionally vague or overbroad and does not violate First

19 Amendment expressive association rights or the fundamental rights

20 of parents seeking SOCE for their minor children.  Id. at 1232-

21 36.

22         Because the court's previous order concluded that

23 plaintiffs were likely to prevail on their 42 U.S.C. § 1983 claim

24 asserting that SB 1172 violated their rights to free speech, the

25 court did not address the alleged constitutional violations

26 underlying plaintiffs' remaining § 1983 claims.  After providing

27 the parties with the opportunity for supplemental briefing, the

28 court now addresses plaintiffs' motion for a preliminary

                              2

1  injunction on the grounds that SB 1172 violates the Free Exercise

2  and Establishment Clauses and privacy rights.  Based on the Ninth

3  Circuit's decision on appeal, the court need not address

4  plaintiffs' § 1983 claims alleging that SB 1172 is

5  unconstitutionally vague or overbroad and violates First

6  Amendment expressive association rights and the fundamental

7  rights of parents seeking SOCE for their minor children.  See id.

8  (rejecting such claims).

9  I.   SB 1172 and Plaintiffs

10         SB 1172 went into effect on January 1, 2013 and was

11 codified in sections 865, 865.1, and 865.2 of the California

12 Business and Professions Code.[1]  Section 865.1 states, "Under no

13 circumstances shall a mental health provider engage in sexual

14 orientation change efforts with a patient under 18 years of age."

15 Cal. Bus. & Prof. Code § 865.1.  Section 865.2 provides that any

16 SOCE "attempted on a patient under 18 years of age by a mental

17 health provider shall be considered unprofessional conduct and

18 shall subject a mental health provider to discipline by the

19 licensing entity for that mental health provider."  Id. § 865.2.

20         Subsection 865(b)(1) defines "sexual orientation change

21 efforts" as "any practices by mental health providers that seek

22 to change an individual's sexual orientation," including "efforts

23 to change behaviors or gender expressions, or to eliminate or

24 reduce sexual or romantic attractions or feelings toward

25 individuals of the same sex."   Id. § 865(b)(1).  Excluded from

26

27         [1]   Although SB 1172 is now codified under the
   aforementioned code sections, the court will continue to refer to
28 "SB 1172" when discussing the three sections collectively.

1   classification as SOCE are "psychotherapies that: (A) provide

2   acceptance, support, and understanding of clients or the

3   facilitation of clients' coping, social support, and identity

4   exploration and development, including sexual orientation-neutral

5   interventions to prevent or address unlawful conduct or unsafe

6   sexual practices; and (B) do not seek to change sexual

7   orientation."   Id. § 865(b)(2).

8       Plaintiff Donald Welch is a licensed marriage and

9   family therapist in California and an ordained minister.   (Welch

10  Decl. ¶ 1 (Docket No. 11).)   He is currently the president of a

11  non-profit professional counseling center, the owner and director

12  of a for-profit counseling center, and an adjunct professor at

13  two universities.   (Id. ¶ 4.)   Welch is also employed part-time

14  as a Counseling Pastor for Skyline Wesleyan Church, which teaches

15  that "human sexuality . . . is to be expressed only in a

16  monogamous lifelong relationship between one man and one woman

17  within the framework of marriage."   (Id. ¶ 5, Ex. A at 3.)   Welch

18  provides treatment that qualifies as SOCE under SB 1172, and his

19  "compliance with SB 1172 will jeopardize [his] employment" at

20  Skyline Wesleyan Church.   (Id. ¶¶ 5, 8-9, 11, 17.)

21      Plaintiff Anthony Duk is a medical doctor and board

22  certified psychiatrist in private practice who works with adults

23  and children over the age of sixteen.   (Duk Decl. ¶ 1 (Docket No.

24  13).)   His current patients include minors "struggling with"

25  homosexuality and bisexuality and he utilizes SOCE.   (Id. ¶ 6.)

26  Plaintiff Aaron Bitzer is an adult who was "involved in" SOCE as

27  an adult and had plans to become a therapist and practice SOCE.

28  (Bitzer Decl. ¶¶ 1-11, 15 (Docket No. 12).)

4

1  II.  Analysis

2        To succeed on a motion for a preliminary injunction,

3  plaintiffs must establish that (1) they are likely to succeed on

4  the merits; (2) they are likely to suffer irreparable harm in the

5  absence of preliminary relief; (3) the balance of equities tips

6  in their favor; and (4) an injunction is in the public interest.

7  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008);

8  Perfect 10, Inc. v. Google, Inc., 653 F.3d 976, 979 (9th Cir.

9  2011).  The Supreme Court has repeatedly emphasized that

10  "injunctive relief [i]s an extraordinary remedy that may only be

11  awarded upon a clear showing that the plaintiff is entitled to

12  such relief."  Winter, 555 U.S. at 22.

13        "The purpose of a preliminary injunction is merely to

14  preserve the relative positions of the parties until a trial on

15  the merits can be held."  Univ. of Tex. v. Camenisch, 451 U.S.

16  390, 395 (1981).  "'A preliminary injunction . . . is not a

17  preliminary adjudication on the merits but rather a device for

18  preserving the status quo and preventing the irreparable loss of

19  rights before judgment.'"  U.S. Philips Corp. v. KBC Bank N.V.,

20  590 F.3d 1091, 1094 (9th Cir. 2010) (quoting Sierra On-Line, Inc.

21  v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984))

22  (omission in original).

23     A.  Section 1983 Claims for Violations of the Religion

24         Clauses

25         1.  Application of SB 1172 to Welch

26        SB 1172 prohibits the use of SOCE with minors only when

27  performed by a "mental health provider," which is limited to:

28
                                 5

a physician and surgeon specializing in the practice of psychiatry, a psychologist, a psychological assistant, intern, or trainee, a licensed marriage and family therapist, a registered marriage and family therapist, intern, or trainee, a licensed educational psychologist, a credentialed school psychologist, a licensed clinical social worker, an associate clinical social worker, a licensed professional clinical counselor, a registered clinical counselor, intern, or trainee, or any other person designated as a mental health professional under California law or regulation.

Cal. Bus. & Prof. Code § 865(a).  Based on this definition, the parties agree that SB 1172 does not affect a religious leader's ability to provide SOCE through his or her church so long as that religious leader is not a "mental health provider" under the statute.

The parties dispute, however, whether SB 1172 extends to a religious leader providing SOCE through his or her church when, like Welch, the religious leader is also a "mental health provider" under the statute.  Defendants contend that SB 1172 would not restrict Welch from providing SOCE in his capacity as a Counseling Pastor, so long as he does not "hold himself out" as a licensed marriage and family therapist when providing therapeutic treatment as a Counseling Pastor.  (Defs.' Opp'n at 14:25-27 (Docket No. 33); cf. Amicus Curiae Opp'n at 9:7-10 (Docket No. 39) ("When he is practicing marriage and family therapy as a state-licensed therapist, whatever the setting, [] he is subject to the same regulations as every other licensed marriage and family therapist, and must comply with SB 1172.").)

Defendants rely on several statutory exemptions for the

6

proposition that SB 1172 would not restrict Welch from offering SOCE when working as a Counseling Pastor.  Most relevant to Welch is the Licensed Marriage and Family Therapist Act ("LMFT Act"), which governs the licensing and regulation of marriage and family therapists.  Cal. Bus. & Prof. Code §§ 4980-4980.90; see also Cal. Bus. & Prof. Code § 4980.04 (providing the short title).  The LMFT Act prohibits the unlicensed practice of marriage and family therapy as defined in the LMFT Act.[2]  Id. § 4980(b).  The LMFT Act provides that "[a] person engages in the practice of marriage and family therapy when he or she performs or offers to perform or holds himself or herself out as able to perform this service for remuneration in any form, including donations."  Id. § 4980.10 (emphasis added).  Section 4980.01, however, exempts application of the LMFT Act to "any priest, rabbi, or minister of the gospel of any religious denomination when performing counseling services as part of his or her pastoral or

_____

[2]   Section 4980.02 of the LMFT Act defines "the practice of marriage and family therapy" as:

> [The] service performed with individuals, couples, or groups wherein interpersonal relationships are examined for the purpose of achieving more adequate, satisfying, and productive marriage and family adjustments. This practice includes relationship and premarriage counseling.  The application of marriage and family therapy principles and methods includes, but is not limited to, the use of applied psychotherapeutic techniques, to enable individuals to mature and grow within marriage and the family, the provision of explanations and interpretations of the psychosexual and psychosocial aspects of relationships, and the use, application, and integration of the coursework and training required by Sections 4980.36, 4980.37, and 4980.41, as applicable.

Id. § 4980.02.

7

professional duties." Id. § 4980.01; see also Nally v. Grace Cmty. Church, 47 Cal. 3d 278, 298 (1988) ("[T]he Legislature has exempted the clergy from the licensing requirements applicable to marriage, family, child and domestic counselors . . . .").

Although section 4980.01 exempts religious leaders from having to obtain a license to provide marriage and family counseling through their church, it does not resolve the application of SB 1172 to Welch.  Welch already has a license under the LMFT Act and presumably wants to "hold himself out" as a licensed marriage and family therapist when providing therapy as a Counseling Pastor for his church.  Section 4980.01 exempts Welch from having to obtain a license to provide therapy through his church, but does not appear to exempt him from regulation of his conduct while performing therapy pursuant to his license. Albeit in dicta, the Ninth Circuit seemed to recognize that SB 1172 would govern Welch's conduct when it emphasized that SB 1172 does not:

•  Prevent mental health providers from referring minors to unlicensed counselors, such as religious leaders

•  Prevent unlicensed providers, such as religious leaders, from administering SOCE to children and adults.

Pickup, 740 F.3d at 1223 (emphasis added).  Accordingly, it is likely Welch will be able to show that SB 1172 will subject him to the possibility of discipline if, as a licensed marriage and family therapist, he utilizes SOCE while working as a Counseling Pastor for his church.  Welch can therefore pursue his § 1983

8

claims asserting that SB 1172 violates his rights under the Free Exercise and Establishment Clauses.

### 2.   Free Exercise Clause

"The Free Exercise Clause, applicable to the states through the Fourteenth Amendment, provides that 'Congress shall make no law . . . prohibiting the free exercise [of religion].'" Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting U.S. Const., amend. I) (omission and alteration in original). "Under the Free Exercise Clause of the First Amendment, the government may not, among other things, 'impose special disabilities on the basis of religious views or religious status.'" Alpha Delta Chi-Delta Chapter v. Reed, 648 F.3d 790, 804 (9th Cir. 2011) (quoting Emp't Div., Dep't of Human Res. of Or. v. Smith, 494 U.S. 872, 877 (1990)).

"The right to freely exercise one's religion, however, 'does not relieve an individual of the obligation to comply with a "valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)."'" Stormans, 586 F.2d at 1127 (quoting Smith, 494 U.S. at 879).  The Supreme Court has thus held that "a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 531 (1993) (citing Smith, 494 U.S. 872).

In Stormans, the Ninth Circuit examined the Supreme Court's free exercise jurisprudence and traced the development of

1    the Court's decision to apply only rational basis review to laws

2    that are neutral and of general applicability.  See Stormans, 586

3    F.3d at 1128-1130.  The Ninth Circuit explained, "Underlying the

4    Supreme Court's jurisprudence is the principle that the Free

5    Exercise Clause 'embraces two concepts[]—freedom to believe and

6    freedom to act.'  The first is absolute but, in the nature of

7    things, the second cannot be."  Id. at 1128 (alteration in

8    original).  "This principle traces its roots to the idea that

9    allowing individual exceptions based on religious beliefs from

10   laws governing general practices 'would . . . make the professed

11   doctrines of religious belief superior to the law of the land,

12   and in effect [] permit every citizen to become a law unto

13   himself.'"  Id. (quoting Reynolds v. United States, 98 U.S. 145,

14   167 (1878) (alteration in original)).

15                    a. Neutrality

16        "[I]f the object of a law is to infringe upon or

17   restrict practices because of their religious motivation, the law

18   is not neutral."  Lukumi, 508 U.S. at 533.  In determining

19   whether a law is neutral, the court must examine the text of the

20   statute and its operation.  Stormans, 586 F.3d at 1130.  "A law

21   lacks facial neutrality if it refers to a religious practice

22   without a secular meaning discernable from the language or

23   context."  Lukumi, 508 U.S. at 533.  Here, the parties do not

24   dispute that SB 1172 is facially neutral.  (Pls.' Mem. at 10:14.)

25   Nonetheless, "[a]part from the text, the effect of a law in its

26   real operation is strong evidence of its object," Lukumi, 508

27   U.S. at 535, and laws may lack neutrality if they "suppress,

28   target, or single out the practice of any religion because of

                              10

1  religious content." Stormans, 586 F.3d at 1131.

2      Plaintiffs contend that SB 1172 lacks neutrality based

3  primarily on two comments in the legislative history of the bill.

4  As a threshold matter, whether a court can consider legislative

5  history in free exercise challenges is an "unsettled" area of

6  law. Id. at 1131-32. Although the Supreme Court in Lukumi

7  examined legislative history to illustrate that the prohibition

8  on animal sacrifice was aimed at the Santeria religion, only one

9  justice joined in that part of decision, and two justices

10 expressly disagreed with the consideration of legislative

11 history. See id. at 1132 (discussing the votes of the justices);

12 cf. United States v. O'Brien, 391 U.S. 367, 383 (1968) (stating

13 that, in the context of a First Amendment free speech claim, the

14 "Court will not strike down an otherwise constitutional statute

15 on the basis of an alleged illicit legislative motive").

16      Assuming consideration of legislative history is proper

17 in free exercises cases, the statements in the bill analyses of

18 SB 1172 are easily distinguishable from the blatant animosity

19 expressed toward the Santeria religion during the passage of the

20 ordinances in Lukumi. For example, at the city council meeting

21 held just weeks after the Santeria Church announced its plans to

22 open, one councilman said that the "Santeria devotees at the

23 Church 'are in violation of everything this country stands for.'"

24 Lukumi, 508 U.S. at 541. The chaplain of the local police

25 department "told the city council that Santeria was a sin,

26 'foolishness,' 'an abomination to the Lord,' and the worship of

27 'demons.'" Id. The city attorney described the practices of the

28 Santeria religion as "abhorrent" and the public crowd at the

1   meeting "interrupted statements by council members critical of

2   Santeria with cheers."  Id. at 541-42.

3        Here, plaintiffs first rely on the statement in the

4   Senate Rules Committee Analysis indicating that the World Health

5   Organization ("WHO") notes that sexual orientation "by itself is

6   not to be regarded as a disorder? [sic] it is often a result of

7   unfavorable and intolerant attitudes of the society or a conflict

8   between sexual urges and religious belief systems.'"  Senate

9   Rules Committee, Committee Analysis of SB 1172, at 6 (Aug. 28,

10  2012).  This statement appears in a section of the analysis that

11  traces the changing views of sexual orientation by the American

12  Psychiatric Association and the WHO.  The quoted statement from

13  the WHO raises both secular and religious influences as factors

14  contributing to reasons individuals may seek SOCE.  It does not

15  suggest that the California Legislature was targeting religious

16  beliefs or religious motivations underlying SOCE when enacting SB

17  1172.

18       The second statement plaintiffs rely on appears in the

19  section of the same bill analysis that describes the practice of

20  SOCE.  The section explains how the APA defines the treatment,

21  how a founder of modern reparative theory defines it, and then

22  states, "Others, particularly conservative Christian

23  transformational ministries, use the term conversion therapy to

24  refer to the utilization of prayer, religious conversion, [and]

25  individual and group counseling to change a person's sexual

26  orientation."  Id. at 7.  Discussing how various groups,

27  including religious groups, define SOCE does not demonstrate that

28  the Legislature was targeting SOCE performed by religious groups,

1  especially when SB 1172 does not prohibit SOCE performed within a
2  church setting so long as it is not performed by a mental health
3  provider.

4         The legislative analyses leading to SB 1172 illustrate
5  that the Legislature was concerned with the harm SOCE therapy
6  causes minors regardless of whether it is motivated by secular or
7  religious beliefs.  Nothing in the legislative history gives rise
8  to the inference that, in enacting the bill, the Legislature
9  sought to suppress, target, or single out the practice of any
10 religion.  Unlike in Lukumi, where the city enacted the
11 ordinances "because of, not merely in spite of their suppression
12 of Santeria religious practice," Lukumi, 508 U.S. at 540, the
13 legislative history reveals that the California Legislature
14 enacted SB 1172 despite religious views, not because of them.

15        Lastly, the fact that Welch may be restricted from
16 performing SOCE as a Counseling Pastor does not defeat the
17 neutrality of SB 1172.  In Stormans, the state of Washington
18 passed regulations that, with limited exceptions, required
19 pharmacists and pharmacies to deliver all lawfully prescribed
20 medications, including Plan B, an emergency contraceptive.
21 Similar to the limitation Welch may face, the Ninth Circuit in
22 Stormans concluded, "That the rules may affect pharmacists who
23 object to Plan B for religious reasons does not undermine the
24 neutrality of the rules."  Stormans, 586 F.3d at 1131.

25        Plaintiffs point out that on remand and after a more
26 complete record developed at trial, the district court in
27 Stormans ultimately concluded that Washington's regulations
28 requiring stocking and disbursing of all medications, including

1    Plan B, was subject to strict scrutiny and violated the Free

2    Exercise Clause.  See Stormans Inc. v. Selecky, 844 F. Supp. 2d

3    1172, 1199 (W.D. Wash. 2012).  Pivotal to its finding that the

4    regulations "target religious conduct" and therefore lacked

5    neutrality, however, was the fact that the regulations "exempt

6    pharmacies and pharmacists from stocking and delivering lawfully

7    prescribed drugs for an almost unlimited variety of secular

8    reasons, but fail to provide exemptions for reasons of

9    conscience."  Id. at 1189.  The district court also found that

10   the "Board of Pharmacy has interpreted the stocking and delivery

11   rules in a way that favors secular conduct over religiously-

12   motivated conduct."  Id. at 1192.  In this respect, the

13   comparison of the district court's decision in Stormans and this

14   case is inapposite because SB 1172 does not contain a single

15   secular exception but provides an unqualified exemption for

16   unlicensed religious leaders.

17        When faced with a similar state statute prohibiting

18   SOCE with minors, the Third Circuit recently held that the

19   statute was neutral.  King v. Governor of the State of New

20   Jersey, 767 F.3d 216, 242-43 (3d Cir. 2014).  Plaintiffs seek to

21   distinguish King on the ground that the New Jersey law

22   "prohibit[ed] all attempts to change sexual orientation,

23   regardless of whether such efforts were intended to influence a

24   client toward heterosexuality or homosexuality."  (Pls.' Ltr. Br.

25   at 2 (Docket No. 86).)  Even assuming plaintiffs are correct that

26   SB 1172 is limited to or aimed at SOCE efforts affecting only

27   homosexuality,[3] the distinction is irrelevant.  As the Ninth

28        [3]   The definition of SOCE in section 865 is not limited

14

1   Circuit has explained, "The Free Exercise Clause is not violated

2   even though a group motivated by religious reasons may be more

3   likely to engage in the proscribed conduct." Stormans, 586 F.3d

4   at 1131.

5        Similar to other neutral laws that have an effect on

6   religious conduct, the evidence before the court indicates that

7   SB 1172 "'punishe[s] conduct for the harm it causes, not because

8   the conduct is religiously motivated.'" Id. (quoting Am. Life

9   League, Inc. v. Reno, 47 F.3d 642, 654 (4th Cir. 1995)). It is

10  therefore unlikely that plaintiffs could establish that SB 1172

11  lacks neutrality.[4]

12                    b. General Applicability

13       "A law is not generally applicable when the government,

14  'in a selective manner[,] impose[s] burdens only on conduct

15  motivated by religious belief.'" Id. at 1134 (quoting Lukumi,

16  508 U.S. at 543). "The 'selective manner' analysis tests the

17  rules for substantial underinclusiveness." Id. Here, SB 1172

18  does not impose burdens on religiously-motivated conduct, but

19  categorically prohibits SOCE performed by a "mental health

20  _____

21  homosexuality, but merely indicates that the definition "includes
    efforts to change behaviors or gender expressions, or to
22  eliminate or reduce sexual or romantic attractions or feelings
    toward individuals of the same sex." Cal. Bus. & Prof. Code §
23  865(b)(1). Plaintiffs nonetheless contend that "the Ninth
    Circuit's interpretation of SB 1172 focused exclusively on
24  efforts to reduce same-sex attraction." (Pls.' Ltr. Br. at 2.)

25       [4] Plaintiffs' reliance on Burwell v. Hobby Lobby Stores,
    Inc., 134 S. Ct. 2751 (2014) is misplaced. Hobby Lobby Stores,
26  Inc., involved a claim under the Religious Freedom and
    Restoration Act ("RFRA"), which provides "very broad protection
27  for religious liberty" and rejects the Supreme Court's holding in
    Smith that a neutral law of general applicability is subject only
28  to rational basis review. See Hobby Lobby Stores, Inc., 134 S.
    Ct. at 2760-61. Plaintiffs have not brought a claim under RFRA.

1  provider" regardless of the motivation for providing SOCE.  As in

2  <u>Stormans</u>, there is no evidence that the California Legislature

3  sought to eliminate the use of SOCE with minor patients only when

4  motivated by religious beliefs.  <u>See id.</u>

5       In fact, the only way SB 1172 could be viewed as under-

6  inclusive is in its exclusion of SOCE performed by an individual

7  who is not a "mental health provider," such as an unlicensed

8  religious leader.  This accommodation for religion cuts against a

9  finding that SB 1172 selectively imposes a burden on conduct

10  motivated by religious belief.  <u>See id.</u> at 1137 ("[T]he rules do

11  not selectively impose an undue obligation on conduct motivated

12  by religious belief because the rules actually provide for

13  religious accommodation.").  In light of the exemption allowing

14  unlicensed religious leaders to provide SOCE and the lack of any

15  evidence suggesting that SB 1172 is under-inclusive, it is

16  unlikely that plaintiffs could show that SB 1172 is not generally

17  applicable.

18       Because it is likely that SB 1172 is a neutral law of

19  general applicability, plaintiffs' claim based on a violation of

20  the Free Exercise Clause would likely be examined under only

21  rationale basis scrutiny.[5]  <u>Accord</u> <u>King</u>, 767 F.3d at 243.

---

22       [5]   For the first time in their supplemental letter brief,

23  plaintiffs mention the possibility of seeking strict scrutiny
   under a hybrid rights theory.  <u>See</u> <u>Smith</u>, 494 U.S. at 882; <u>see</u>

24  <u>generally</u> <u>Miller v. Reed</u>, 176 F.3d 1202, 1207 (9th Cir. 1999)
   ("<u>Smith</u>, however, excepts a hybrid-rights claim from its rational

25  basis test.  In <u>Smith</u>, the Court distinguished the strict
   scrutiny imposed in 'hybrid situation[s]' in which a law

26  'involve[s] not the Free Exercise Clause alone, but the Free
   Exercise Clause in conjunction with other constitutional

27  protections.'").  Notwithstanding the fact that plaintiffs failed

28  to purse such a theory in their motion for a preliminary

16

1          3.  Establishment Clause

2          The Establishment Clause of the First Amendment,

3    applied against the states by incorporation into the Fourteenth

4    Amendment, see Cantwell v. Connecticut, 310 U.S. 296, 303 (1940),

5    provides, "Congress shall make no law respecting an establishment

6    of religion."  U.S. Const. amend. I.  "This clause applies not

7    only to official condonement of a particular religion or

8    religious belief, but also to official disapproval or hostility

9    towards religion."  Am. Family Ass'n, Inc. v. City & County of

10   San Francisco, 277 F.3d 1114, 1120-21 (9th Cir. 2002).

11          "A statute or regulation will survive an Establishment

12   Clause attack if (1) it has a secular legislative purpose, (2)

13   its primary effect neither advances nor inhibits religion, and

14   (3) it does not foster excessive government entanglement with

15   religion."  Williams v. California, 764 F.3d 1002, 1014 (9th Cir.

16   2014) (citing Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971)).

17   "Although the Lemon test is perhaps most frequently used in cases

18   involving government allegedly giving preference to a religion,

19   the Lemon test accommodates the analysis of a claim brought under

20   a hostility to religion theory as well."  Am. Family Ass'n, Inc.,

21   277 F.2d at 1121.  Here, plaintiffs rely exclusively on the third

22   prong of the Lemon test, arguing that SB 1172 results in

23   excessive government entanglement with religion.

24          "In determining whether there is an excessive

25   entanglement with religion, [the court] must analyze 'the

26

27   injunction, plaintiffs do not explain how they could rely on any
     free speech rights after the Ninth Circuit's decision on appeal.

28

1  character and purpose of the institutions that are benefitted,

2  the nature of the aid that the State provides, and the resulting

3  relationships between the government and the religious

4  activity.'" Williams, 764 F.3d at 1015 (quoting Lemon, 403 U.S.

5  at 615).  Here, only the third inquiry is relevant to plaintiffs'

6  claim based on hostility toward religion.  "A relationship

7  results in an excessive entanglement with religion if it requires

8  'sustained and detailed' interaction between church and State

9  'for enforcement of statutory or administrative standards.'"  Id.

10  (quoting Lemon, 403 U.S. at 621).

11        In contending that SB 1172 results in excessive

12  entanglement in violation of the Establishment Clause, plaintiffs

13  first rely on cases rejecting clergy malpractice claims.

14  "[I]t is well settled that civil tort claims against clerics that

15  require the courts to review and interpret church law, policies,

16  or practices in the determination of the claims are barred by the

17  First Amendment under the entanglement doctrine."  Franco v. The

18  Church of Jesus Christ of Latter-day Saints, 21 P.3d 198, 204

19  (Utah 2011) (citing Serbian E. Orthodox Diocese v. Milivojevich,

20  426 U.S. 696, 709-10 (1976)).  In Franco, plaintiffs sought to

21  bring a state law malpractice claim based on a church bishop's

22  ecclesiastical counseling and advice to "forgive, forget, and

23  seek Atonement" in response to the minor plaintiff's claim of

24  sexual abuse.  Id. at 200-01.  The Utah Supreme Court held that

25  the Establishment Clause prohibited the claim because

26  adjudication of it would "necessarily entangle the courts in the

27  examination of religious doctrine, practice, or church polity."

28  Id. at 204.

1          Plaintiffs also rely on the Tenth Circuit's decision in

2     Colorado Christian University v. Weaver, 534 F.3d 1245 (10th Cir.

3     2008).  In Weaver, Colorado provided scholarships to eligible

4     students who attended any accredited public or private college in

5     Colorado unless the state determined that the college was

6     "pervasively sectarian."  Weaver, 534 F.3d at 1250.  The Tenth

7     Circuit held that the program violated the Establishment Clause

8     because "it expressly discriminates among religions, allowing aid

9     to 'sectarian' but not 'pervasively sectarian' institutions, and

10    it does so on the basis of criteria that entail intrusive

11    governmental judgments regarding matters of religious belief and

12    practice."  Id. at 1256.  The court explained, "'[T]he inquiry

13    into the recipient's religious views required by a focus on

14    whether a school is pervasively sectarian is not only unnecessary

15    but also offensive.  It is well established, in numerous other

16    contexts, that courts should refrain from trolling through a

17    person's or institution's religious beliefs.'"  Id. at 1261

18    (quoting Mitchell v. Helms, 530 U.S. 793, 828 (1999)).

19          Unlike clergy malpractice claims or the scholarship

20    program in Weaver, SB 1172 neither contemplates nor requires an

21    examination of religious views or doctrine.  Without

22    consideration of the motive or justification for providing SOCE,

23    SB 1172 categorically prohibits a mental health provider from

24    providing that type of therapeutic treatment to a minor.  In

25    enforcing SB 1172, the state need not evaluate or even understand

26    the teachings, doctrines, or beliefs of a church about

27    homosexuality or one's ability to change his or her sexual

28    orientation.  The inquiry into whether a mental health provider

1   performed SOCE will be the same regardless of whether the

2   provider utilized the treatment while working for a church.  SB

3   1172 will thus not require the state to engage in "intrusive

4   judgments regarding contested questions of religious belief or

5   practice."  Id.

6        The case at hand is also distinguishable from N.L.R.B.

7   v. Catholic Bishop of Chicago, 440 U.S. 490 (1979).  In that

8   case, the Supreme Court found that the National Labor Relations

9   Board's exercise of jurisdiction over teachers of parochial

10  schools presented a "significant risk" that the Establishment

11  Clause would be infringed.  N.L.R.B., 440 U.S. at 502.  The Court

12  explained that, in response to teachers' charges of unfair labor

13  practices, the schools claimed that "their challenged actions

14  were mandated by their religious creeds."  Id.  The Court was

15  concerned that resolution of such religious defenses would result

16  in excessive entanglement because it would "necessarily involve

17  inquiry into the good faith of the position asserted by the

18  clergy-administrators and its relationship to the school's

19  religious mission."  Id.

20       Here, however, even if a mental health provider's use

21  of SOCE relies on church doctrines or teachings, the state need

22  not evaluate or consider those religious teachings in order to

23  determine whether the provider performed SOCE.  A mental health

24  provider cannot defend against a disciplinary action under SB

25  1172 on the ground that the SOCE was utilized because of the

26  provider's or patient's religious beliefs.

27       It is also unlikely that SB 1172 will require continued

28  state oversight of a church, its teachings, or counseling, which

1   weighs against a finding of excessive entanglement.  Cf. N.L.R.B.

2   v. Hanna Boys Ctr., 940 F.2d 1295, 1304 (9th Cir. 1991) (finding

3   the lack of an Establishment Clause violation when, inter alia,

4   the government would not be involved "in continuing or systematic

5   monitoring of the Church's activities and should not involve

6   monitoring the religious aspects of [the institutions] activities

7   at all[, and government] involvement will not create the reality

8   or the appearance of the government's supervising or

9   collaborating with the Church").

10          Lastly, plaintiffs attempt to raise the relevance of

11  religious doctrine by arguing that Welch offers "some degree of

12  conversion therapy but [plaintiffs] do not believe that [he]

13  'seek[s] to change' clients as prohibited by the statute."

14  (Pls.' Ltr. Br. at 4.)  In the prior appeal, the Ninth Circuit

15  held that SOCE is a type of "therapeutic treatment" and that the

16  text of the statute "is clear to a reasonable person."  Pickup,

17  740 F.3d at 1229, 1234.  The Ninth Circuit found it "hard to

18  understand how therapists who identify themselves as SOCE

19  practitioners can credibly argue that they do not understand what

20  practices qualify as SOCE."  Id.  Under the Ninth Circuit's

21  reasoning, this line of argument is disingenuous.

22          Accordingly, it is unlikely plaintiffs will be able to

23  show that SB 1172 impermissibly entangles the state with religion

24  and thus it will likely be subject only to rational basis review.

25          4.  Rational Basis Review

26          Because it appears likely that SB 1172 does not run

27  afoul of the Religion Clauses, it will likely be subject only to

28  rational basis review.  Stormans, 586 F.3d at 1137.  "Under

1   rational basis review, the rules will be upheld if they are

2   rationally related to a legitimate governmental purpose." Id.

3   "To invalidate a law reviewed under this standard, '[t]he burden

4   is on the one attacking the legislative arrangement to negative

5   [sic] every conceivable basis which might support it.'" Id.

6   (quoting Heller v. Doe by Doe, 509 U.S. 312, 320 (1993))

7   (alteration in original).  Plaintiffs have not proffered any

8   argument as to why SB 1172 could not survive rational basis

9   review and, more importantly, the Ninth Circuit held on appeal

10  that "SB 1172 is rationally related to the legitimate government

11  interest of protecting the well-being of minors." Pickup, 740

12  F.3d at 1232.

13          B.    Section 1983 Claims for Violations of Privacy Rights

14                1.    Third-Party Standing

15          Plaintiffs' § 1983 claim for violations of privacy

16  rights relies primarily, if not exclusively, on parents' and

17  minors' privacy rights.  (See Compl. ¶¶ 65-76.)  In its previous

18  order, the court found that plaintiffs may not assert the third-

19  party rights of parents of minor children or minors who want to

20  pursue SOCE.  The court reasoned that plaintiffs could not

21  "credibly suggest that parents of minor children who seek SOCE

22  and minors who desire SOCE face a hindrance in asserting their

23  own rights" because those very individuals challenged the

24  constitutionality of SB 1172 in a case filed three days after

25  plaintiffs initiated this action.  (Dec. 3, 2012 Order at 8:8-

26  17); accord King, 767 F.3d at 244 ("[T]he fact that minor clients

27  have previously filed suit [challenging a state law banning SOCE

28  with minors] bolsters our conclusion that they are not

                                    22

1   sufficiently hindered in their ability to protect their own

2   interests.").

3          Plaintiffs now suggest that the court should reconsider

4   its prior decision in light of the negative publicity surrounding

5   this case.  That negative publicity--which was more often aimed

6   at this court, not individuals seeking SOCE--did not deter the

7   parent and minor plaintiffs in Pickup from pursuing their rights

8   on appeal.  While "a fear of social stigma can in some

9   circumstances constitute a substantial obstacle to filing suit,"

10  an assertion that a client does not want "others to even know

11  they are in therapy" is insufficient to merit third-party

12  standing.  King, 767 F.3d at 244.  Having determined that

13  plaintiffs lack prudential standing to assert the rights of

14  parents and minors, plaintiffs are unlikely to prevail on any

15  privacy claims based on those rights.

16              2.   Evidentiary Privileges

17         Plaintiffs further allege that SB 1172 lacks

18  "safeguards to protect such basic concepts of privacy as the

19  psychotherapist-patient privilege or even the clergy-penitent

20  privilege."  (Compl. ¶ 71.)  "Under California Evidence Code §

21  1014 a psychotherapeutic patient has the privilege to refuse to

22  disclose and to prevent others from disclosing confidential

23  communications between the patient and doctor."  Caesar v.

24  Mountanos, 542 F.2d 1064, 1066 (9th Cir. 1976); see also Cal.

25  Evid. Code § 1016.  The Ninth Circuit has recognized that

26  exceptions to the testimonial privilege must comport with a

27  patient's "conditional right of privacy in the doctor-patient

28  relationship" and that the litigation exception in section 1016

1   is "properly justified." Caesar, 542 F.2d at 1067-68.

2   Plaintiffs' reliance on such testimonial privileges attempts to

3   import constitutional significance to state evidentiary

4   privileges.  More importantly, nothing in SB 1172 or its

5   legislative history purports to alter California's existing

6   psychotherapist-patient privilege.[6]  It therefore appears

7   unlikely that plaintiffs could prevail on any claim based on the

8   psychotherapist-patient, penitent, or clergy privileges.

9       C. Conclusion

10          Plaintiffs have not shown they are likely to succeed on

11  the merits of their § 1983 claims based on violations of the Free

12  Exercise and Establishment Clauses or any privacy rights.  Absent

13  such a showing, plaintiffs are not entitled to a preliminary

14  injunction and the court need not address irreparable harm, the

15  balance of equities, or the public interest.  Ass'n des Eleveurs

16  de Canards et d'Oies du Quebec v. Harris, 729 F.3d 937, 953 (9th

17  Cir. 2013).  Accordingly, because plaintiffs are not likely to

18  prevail on any of their claims that remained after the Ninth

19  Circuit's decision in Pickup, the court must deny plaintiffs'

20

21          [6]   Because SB 1172 is limited to "mental health providers"
    as defined in the statute, it does not appear to extend to a
22  "member of the clergy" as contemplated by penitent or clergy
    privileges in California Evidence Code sections 1033 and 1034.
23  Cal. Evid. Code §§ 1033 (penitent privilege), 1034 (clergy
    privilege); see also id. § 1030 (defining "member of the clergy"
24  as a "priest, minister, religious practitioner, or similar
    functionary of a church or of a religious denomination or
25  religious organization").  Even if a licensed family therapist
    providing therapy for the church, such as Welch, comes within the
26  definition of "clergy" for purposes of the penitent and clergy
    privileges, SB 1172 again does not appear to alter the
27  privileges.

28

motion for a preliminary injunction.

IT IS THEREFORE ORDERED that plaintiffs' motion for a preliminary injunction as it remains after the appeal in this matter be, and the same hereby is, DENIED.

Dated:  November 4, 2014

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

25